NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0161n.06

No. 13-1844

UNITED STATES COURTS OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DAVID KATOULA and NAHLA KATOULA, | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DETROIT ENTERTAINMENT, LLC, dba Motor | ) | COURT FOR THE EASTERN |
| City Casino, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE:     GUY, GIBBONS, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge.  David and Nahla Katoula appeal the district court's grant of MotorCity Casino's motion to dismiss the Katoulas' FMLA complaint.  MotorCity fired David Katoula after he requested leave from work, pursuant to a previously authorized intermittent leave, to take his mother to the doctor, but failed to do so because his car was stolen.  The Katoulas filed their complaint after the FMLA's two-year statute of limitations period elapsed.  In order to take advantage of the FMLA's three-year limitations period for willful violations, they were required to prove that MotorCity's actions willfully violated the FMLA.  MotorCity did not willfully violate the FMLA by denying FMLA leave to Katoula for the day he took off.  Furthermore, the Katoulas' theory that MotorCity coerced Katoula into lying about why he had missed work so that the casino would have a pretext for firing him for taking FMLA leave is not

plausible. Accordingly, the district court properly determined that the Katoulas' claim was time-barred.

David Katoula worked for MotorCity Casino as a dealer and floor supervisor. On an unspecified date prior to the incidents that gave rise to this lawsuit, Katoula received permission to take intermittent FMLA leave to care for his mother. *See* 29 U.S.C. § 2612(a)(1)(C). On July 31, 2009, Katoula needed to take his mother to the doctor. But before Katoula could inform anyone at MotorCity that he would miss work to care for his mother, Katoula learned that his car had been stolen. Katoula then called MotorCity and said that he would not be at work because he needed to take his mother to the doctor and deal with the stolen car. Katoula made a police report, and reported to work thereafter. But because of the delay caused by filing the police report, Katoula never took his mother to the doctor's office.

When Katoula arrived at work, he explained what happened to his supervisor, Scott Romano. Romano then allegedly told Katoula to fill out a form and write that Katoula had missed work for an approved FMLA purpose. The next day, MotorCity supervisors called Katoula into an office and proceeded to interrogate him about why he had missed work. According to Katoula, due to the stress of the interrogation, Katoula wrote a statement that explained that his previous statement had been mistaken—he had not missed work for an approved FMLA purpose. Later that day, MotorCity supervisors informed Katoula that he could be subject to discipline for lying, interrogated him further, and gave him an opportunity to make an additional statement. Katoula chose to make a full written statement that essentially recited the above facts. After the meeting ended, MotorCity suspended Katoula and eventually fired him.

Approximately two-and-a-half years later, the Katoulas sued MotorCity. Their complaint alleged that MotorCity had violated David Katoula's rights under the FMLA, and Nahla Katoula alleged loss of consortium. MotorCity moved to dismiss because the Katoulas filed suit after the two-year statute of limitations period had expired and had not alleged that MotorCity acted willfully, which would have extended the limitations period to three years. The district court agreed, but gave the Katoulas an opportunity to cure their deficient complaint. The Katoulas filed an amended complaint containing additional facts, and MotorCity again moved to dismiss. The district court granted the motion because the court concluded that the amended complaint did not contain facts that presented a plausible claim that MotorCity acted willfully. The court also reasoned that the complaint did not allege facts that could support a prima facie claim under the FMLA. The Katoulas appealed.

The district court properly granted MotorCity's motion to dismiss. The Katoulas filed their complaint after the two-year limitations period elapsed, and have not plausibly alleged sufficient facts to show that MotorCity willfully violated the FMLA. 29 U.S.C. § 2617(c)(1)– (2). The Katoulas argue that the complaint established that MotorCity supervisors understood that they could not terminate Katoula for exercising his rights under the FMLA, and that supervisors intentionally coerced Katoula into changing his story so that they could fire him for lying as a pretext for Katoula's declaring his intention to take FMLA leave. They argue that these facts state a claim for relief under both an interference and a retaliation theory. Appellant's Br. at 14–15; *see also Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

The plaintiffs' interference claim fails because it is not plausible that MotorCity willfully interfered with Katoula's FMLA rights. An interference claim turns on whether an employer failed to provide its employee benefits guaranteed by the FMLA. *JAC Prods.*, 443 F.3d at 507.

To prove willfulness, the Katoulas would need to show that MotorCity "act[ed] with knowledge that its conduct is prohibited by the FMLA or with reckless disregard of the FMLA's requirements." *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004). Furthermore, after the Supreme Court's decisions in *Iqbal* and *Twombly*,[1] a plaintiff must do more than make the conclusory assertion that a defendant acted willfully. The Supreme Court specifically addressed state-of-mind pleading in *Iqbal*, and explained that Rule 9(b)—which allows a plaintiff to plead "[m]alice, intent, knowledge, and other conditions of a person's mind . . . generally"—does not give a plaintiff license to "plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss." *Iqbal v. Ashcroft*, 556 U.S. 662, 678, 79 (2009). As we have explained in a non-FMLA context, although conditions of a person's mind may be alleged generally, "the plaintiff still must plead facts about the defendant's mental state, which, accepted as true, make the state-of-mind allegation 'plausible on its face.'" *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678).

The Katoulas' complaint contains no facts that allow a court to infer that MotorCity knew or acted with reckless disregard of the fact that it was interfering with Katoula's rights. An employee cannot prevail on an interference claim without demonstrating that an employer denied the employee a right he or she was entitled to under the FMLA. *See Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004). It is not clear whether Katoula was in fact entitled to leave on July 31 given the fact that he did not actually use that time to care for his mother. The FMLA entitles eligible employees to up to twelve weeks of leave to "care for the spouse, or a

---

[1] Although we held in *Ricco*, 377 F.3d at 603, that a statement of willfulness was sufficient, that case preceded *Iqbal* and *Twombly*.

son, daughter, or parent, of the employee . . . [if that family member] has a serious health condition." 29 U.S.C. § 2612(a)(1)(C). The FMLA does not entitle an employee to leave for a purpose not enumerated in the statute (e.g., reporting a stolen car to the police). Courts have so held, for instance in the cases of taking leave to go a sister's wedding, see *Alsoofi v. Thyssenkrupp*, No. 09-cv-12869, 2010 WL 973456 (E.D. Mich. Mar. 15, 2010), and using leave to go camping, see *Williamson v. Parker Hannifin Corp.*, 208 F. Supp. 2d 1248, 1250 (N.D. Ala. 2002). In *Morris v. Family Dollar Stores of Ohio, Inc.*, 320 F. App'x 330, 337 (6th Cir. 2009), we concluded that an employee's interference claim failed because the employee was not entitled to FMLA leave to care for his mother because she did not have a serious health condition. Similarly, Katoula was not entitled to FMLA leave because he did not care for his mother. It is possible that an employee may be able to maintain an interference claim when that employee had a good-faith intention to miss work for an approved purpose, but was prevented from accomplishing that purpose because of some independent force. But the Katoulas have cited, and we have found, no cases that support that proposition. In any event, we need not resolve that question because if it is at least unclear whether Katoula was entitled to FMLA leave for his attempt to care for his mother, then MotorCity could not have knowingly or recklessly disregarded the Act's requirements by denying or otherwise interfering with his attempt at doing so.

The Katoulas argue in the alternative that their complaint asserted a retaliation claim. The Katoulas are not clear about what conduct was the protected activity, and the complaint does not say whether the protected activity was his giving notice and missing work on July 31, or his initial request for permission to take intermittent leave. Either way, a willful retaliation claim fails. First, MotorCity could not have recklessly disregarded its FMLA obligations where the act

of missing work on July 31 was not clearly protected activity in the first place. In *Morris*, after concluding that the plaintiff was not entitled to FMLA leave, we concluded that the plaintiff could not maintain a retaliation claim because she did not engage in protected activity. 320 F. App'x at 338. As discussed above, Katoula was not entitled to leave for his July 31 absence (or at least he was not so obviously entitled to leave that MotorCity's actions could be considered willful). Because he was not entitled to leave, it is not plausible that MotorCity acted with reckless disregard of its FMLA obligations so as to constitute a willful violation.

The Katoulas' retaliation claim is also not plausible if we strain to read the complaint as asserting that the relevant request was the initial request for intermittent leave that Katoula made before the events of July 31. The complaint does not specifically assert this. For such an argument to pass muster, this court would have to accept that it was plausible that MotorCity had been seeking a pretext for firing Katoula since it initially approved his request for intermittent leave, and then realized that such an excuse had presented itself when Katoula missed work on July 31. To capitalize on Katoula's tardiness, the supervisors necessarily would have willfully intimidated and bullied him into changing his story so that they could actually fire him for originally getting approval for intermittent leave. There is no allegation that intermittent leave had even been taken previously. This theory, while not outside of the realm of the possible, is not supported by enough facts so as to make it plausible as required by *Iqbal* and *Twombly*.

For the foregoing reasons, the judgment of the district court is AFFIRMED.