COHN, D.J., delivered the opinion of the court, in which BOGGS, J., joined. CLAY, J. (pp. 618-22), delivered a separate dissenting opinion.
OPINION
AVERN COHN, Senior District Judge.
This is an employment discrimination case. Plaintiff/Appellant Corey Crugher (“Crugher”), a Michigan Department of Corrections (“MDOC”) employee working at the Ionia Correctional Facility (“ICF”), brought this action against Defendant/Ap-pellee John Prelesnik (“Prelesnik”), the warden of the ICF, claiming that Crugher was retaliated against, subjected to harassment and intimidation, and ultimately terminated after he took time off under the self-care provision of the Family Medical Leave Act (“FMLA”), 29 U.S.C. § 2612(a)(1)(D). As a form of relief, *612 Crugher sought reinstatement at the ICF. The district court granted Prelesnik’s motion to dismiss under Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure on the grounds that the claim is barred by sovereign immunity or, alternatively, is untimely under the two-year limitations period in the FMLA. Crugher appeals.
This appeal requires us to decide whether an action by a state employee seeking prospective injunctive relief (reinstatement) against a state official under the FMLA’s self-care provision applies the limitations period contained in the FMLA. We hold that it does. We also agree with the district court that Crugher failed to state a willful violation of the FMLA, and that allowing Crugher to amend his complaint to allege willfulness — to take advantage of an extended three-year limitations period' — would be futile. Therefore, we affirm.
I.
A.
On February 27, 1994, Crugher began employment for the MDOC as a corrections officer assigned to the Saginaw Mound Correctional Facility in Detroit, Michigan. Five years later, in 1999, Crugher developed irritable-bowel syndrome (“IBS”) and generalized anxiety disorder (“GAD”). As a result of these chronic medical conditions, Crugher suffered abdominal pain, diarrhea, bleeding, cramping, and fatigue. Crugher’s “flareups” lasted 24 hours once every six weeks, and it was necessary for him to miss work during a flare-up.
Crugher excelled as a corrections officer despite his medical conditions. He took time off and intermittent FMLA leave when necessary.
In November 2009, Crugher was transferred to ICF. While employed at ICF, Crugher continued to take as-needed medical leaves pursuant to the self-care provision of the FMLA.
Crugher says he was subjected to harassment and intimidation at ICF because he took FMLA leave. For example, on February 8, 2010, Crugher was given a written counseling memorandum “for incurring lost time in four consecutive pay periods,” specifically related to his “utilization of sick leave.” When using sick leave in the future, Crugher was “instructed to provide medical documentation” from his physician including “diagnosis and prognosis, the reason [he] could not work, and the expected date of return to work.”
On April 23, 2010, Crugher was placed on “interim rating,” where his performance was closely monitored for 180 days, because his “time and attendance issues” did not improve. Crugher was instructed that, “[i]n the future [his] time and attendance will be closely monitored for unscheduled absences.” Crugher was further reminded of the requirement to provide medical documentation “for each.instance of sick-leave usage per the conditions outlined in the February 8, 2010 counseling memo.” Crugher’s follow-up rating at the conclusion of the 180 days commended him for having “good time and attendance.”
In a subsequent follow-up rating sometime after October 20, 2010,[1] Crugher was placed back on interim rating for a period of 180 days. Crugher was criticized for his continuous abuse of “time and attendance” from August 2010 through October 2010. Crugher was warned that “[fjailure to correct these deficiencies will result in *613 further disciplinary action up to and including dismissal.”[2]
On November 17, 2010, Crugher presented to his doctor with severe abdominal pain, diarrhea, bleeding, cramping, and fatigue. Following the doctor’s appointment, Crugher submitted a request for FMLA leave. He was approved for intermittent FMLA leave from November 22, 2010 through May 21, 2011.
Subsequent to being approved for intermittent FMLA leave, on November 23, 2010, Crugher was notified that he was to attend a “Performance Rating Conference” because of “non-compliance with the DOC Employee Handbook, Employment Requirements, 3. Use of Leave.”[3] On January 11, 2011, Crugher was discharged.
B.
On January 14, 2011, Crugher’s union filed a grievance on his behalf claiming that he was wrongfully terminated. It was ultimately determined that Crugher’s termination was justified because he “continued to liquidate sick leave in conjunction with regular days off and holidays. His unsatisfactory service occurred while on a second unsatisfactory service rating and a last chance agreement.”
On April 16, 2013, after exhausting his administrative remedies, Crugher filed a one-count complaint claiming that he was terminated because of his protected FMLA leave arid seeking reinstatement to his position. Crugher relied on Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and Diaz v. Michigan Department of Corrections, 703 F.3d 956 (6th Cir.2013).
As noted above, the district court dismissed the action on the grounds that Pre-lesnik was not the proper defendant because he did not have anything to do with the alleged violation of Crugher’s rights under the FMLA.[4] As such, the district court reasoned that the state was the real party in interest and that Eleventh Amendment sovereign immunity precluded Crugher’s claim. Alternatively, the district court held that Crugher’s claim was barred by the FMLA’s two-year statute-of-limitations period.
II.
Prelesnik’s motion to dismiss was filed under Federal Rules of Civil Procedure 12(b)(1) and (6).
A.
A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) “may either attack the claim of jurisdiction on its face or it can attack the factual basis of jurisdiction.” Golden v. Gorno Bros., Inc., 410 F.3d 879, 881 (6th Cir.2005). Where, as here, the district court did not resolve any factual disputes, “our review of the district court’s application of the law to the facts is de novo.” Id.
B.
A district court’s dismissal of a plaintiffs complaint under Federal Rule of Civil Procedure 12(b)(6) is also reviewed de novo. Lindsay v. Yates, 498 F.3d 434, *614 438 (6th Cir.2007). The complaint is construed in the light most favorable to the plaintiff, and we accept the complaint’s allegations as true, drawing all reasonable inferences in favor of the plaintiff. Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir.2007) (citing Evans-Marshall v. Bd. of Educ., 428 F.3d 223, 228 (6th Cir.2005)). Ultimately, “[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief.” Id. (citation omitted).
III.
Under 29 U.S.C. § 2617(c)(1), FMLA actions must be brought "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.” This period is extended to three years if the plaintiff alleges a “willful violation” of the FMLA. § 2617(c)(2). Crugher admits that the “last event constituting the alleged violation for which the action is brought” is his termination from employment that occurred on January 11, 2011. Crugher did not file this action until April 16,2013, over three months past the FMLA’s two-year limitations period.
Crugher argues that the FMLA’s statute-of-limitations period does not apply because his claim is brought “under Ex parte Young.”[5] Appellant Br. at 28. Alternatively, Crugher argues that his claim falls within the FMLA’s three-year limitations period for willful violations.
A.
The self-care provision of the FMLA allows an employee “a total of 12 workweeks of leave during any 12-month period” for, inter alia, "... a serious health condition that makes the employee unable to perform the functions of the position of such employee.” 29 U.S.C. § 2612(a)(1)(D). To enforce a violation of the self-care provision, an employee may bring an action for damages, id. at § 2617(a)(1)(A), or for equitable relief “including employment, reinstatement, and promotion,” id. at § 2617(a)(1)(B).
The Supreme Court, however, has determined that the FMLA’s self-care provision is not enforceable in a private action seeking money damages against Coleman v. Court of Appeals of Md., — U.S. -, 132 S.Ct. 1327, 1332, 182 L.Ed.2d 296 (2012).[6] We have since held that a state employee is permitted to seek prospective relief against a state official for violating the self-care provision as long as the employee sufficiently alleges “an ongoing violation of federal law to maintain his equitable claim.” Diaz v. Mich. Dep’t of Corrs., 703 F.3d 956, 966 (6th Cir.2013).
Crugher argues that, since he is bringing an “Ex parte Young claim,”[7] the FMLA’s two-year statute of limitations period does not apply to his claim. He states that “the remedies available in an action for prospective injunctive relief, pursuant to Ex parte Young, will not be the same as an action under the underlying federal claim.” Appellant Br. at 28-29. Crugher, citing Seminole Tribe of Florida v. Flori *615 da, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), contends that we must look to analogous state law actions to determine the appropriate limitations period. We disagree.
Crugher’s claim is not an “Ex parte Young claim”; it is a FMLA claim seeking prospective injunctive relief, expressly permitted by § 2617(a)(2) and (1)(B). Ex parte Young simply allows Crugher’s claim for reinstatement, which would otherwise be barred by sovereign immunity, to be brought against Prelesnik. Importantly, our decision in Diaz stated that it is “not accurate” that state employees “have no rights derived from the FMLA” Diaz, 703 F.3d at 964 (emphasis added). The best reading of Diaz — and the one most consistent with Supreme Court case law on the Ex parte Young doctrine — is that equitable-relief suits are “derived from the FMLA” itself. Ibid. It is true that in some instances federal courts must determine whether the Supremacy Clause creates an implied right of action against a state official, where there is no express cause of action, and where Congress intended to create a private right and private remedy. See, e.g., Arendale v. City of Memphis, 519 F.3d 587, 596 (6th Cir.2008) (citing Alexander v. Sandoval, 532 U.S. 275, 286, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001)). In these instances, there may not be a specific statute setting a limitations period, and courts look elsewhere to determine the proper limitations period.[8] Indeed, in Ex parte Young, a state official was sued not for violating a statute but for violating the Constitution. Here, however, § 2617(a)(1)(B) of the FMLA expressly permits Crugher to seek prospective in-junctive relief for violations of the FMLA’s self-care provision. Crugher’s attempt to apply an implied right of action directly under Ex parte Young is without merit because his suit is pursuant to an express right of action — the FMLA. See 29 U.S.C. § 2617(a)(2).
The dissent reaches the wrong conclusion and misplaces its reliance on Mitchell v. Chapman, 343 F.3d 811, 832 (6th Cir.2003), stating that a suit against a state official seeking prospective relief is not expressly permitted by the FMLA. We agree with the dissent that Mitchell precludes FMLA claims against state employees in their individual capacities. Id. at 825-26; see also Diaz, 703 F.3d at 961. However, Diaz clarified that “[t]he Supreme Court and this Circuit barred suits for damages only, not for equitable relief.” Diaz, 703 F.3d at 964 (emphasis in original). We reasoned that the FMLA allows for equitable relief including reinstatement, and that the Eleventh Amendment does not bar “suits for equitable, prospective relief, such as reinstatement, against state officials in their official capacity.” Id. at 964. And the FMLA expressly allows suit for equitable relief “against any employer (including a public agency) in any Federal or State court.” 29 U.S.C. § 2617(a)(2) (emphasis added). The dissent erroneously concludes that the FMLA’s definition of employer excludes suits against state officials. It does not. *616 It precludes suits against state officials in their individual capacities. The dissent’s position that the FMLA does not allow official capacity suits against state officials for injunctive relief because such suits are, in reality, nothing more than suits against the agency itself, ignores what we squarely held in Diaz: the Eleventh Amendment does not bar suits against state officials for equitable relief to enforce the FMLA’s self-care provision. Diaz, 703 F.3d at 964. Given our conclusion in Diaz and the FMLA’s allowance of such suits, the dissent’s reliance on Mitchell is misplaced.
So too is Crugher’s reliance on Seminole Tribe and Diaz for his position that “the remedies available in an action to enforce a right conferred by statute pursuant to Ex parte Young are not the same as the remedies conferred by the federal statute itself.” Appellant Br. at 31 (emphasis in original). Diaz did not authorize a remedy different than the remedy available in the FMLA: reinstatement. Rather, Diaz clarified that state officials could be sued under the FMLA for reinstatement, despite Coleman, because § 2617(a)(1)(B) was a constitutional exercise of Congress’s powers as applied to state officials. Diaz, 703 F.3d at 964. The remedy Crugher seeks here is reinstatement to his position; section 2617(a)(1)(B) of the FMLA expressly provides for this remedy.
Crugher reads Coleman too broadly. Coleman did not invalidate the entirety of the FMLA’s remedial scheme. The Supreme Court in Coleman held that the portion of the FMLA allowing for money damages under the self-care provision was unconstitutional because Congress did not validly abrogate states’ sovereign immunity. 132 S.Ct. at 1338. The Supreme Court did not say anything about the portion of the self-care provision allowing for equitable claims including reinstatement. Therefore, we “refrain from invalidating more of the statute than is necessary.” Regan v. Time, Inc., 468 U.S. 641, 652, 104 S.Ct. 3262, 82 L.Ed.2d 487 (1984). Indeed, Crugher’s argument is foreclosed by Diaz where we explicitly stated that § 2617(a)(1)(B) providing for equitable relief is constitutional:
Congress did not have to abrogate sovereign immunity where a state employee sues a state official in his or her official capacity seeking equitable, prospective relief in the form of reinstatement for violations of the self-care provision because the Eleventh Amendment does not act as a bar to such suits in the first instance. Section 2617(a)(1)(B) was, therefore, a constitutional exercise of Congress’s powers.
Diaz, 703 F.3d at 964 (emphasis added). Diaz thus indicates that Crugher’s claim is not an “Ex parte Young claim,” but rather a claim by a state employee seeking reinstatement directly under § 2617(a)(1)(B).
Finally, accepting Crugher’s position would accord a reinstatement action by a state employee against a state official a longer statute-of-limitations period than an action brought by a private employee against a private employer. There is no basis for this distinction. Indeed, the Ex parte Young exception is based on a legal fiction that “a state official who enforces [a] law ‘comes into conflict with the superi- or authority of [the] Constitution,’ and therefore is ‘stripped of his official or representative character’ and is subjected in his person to the consequences of his individual conduct.” Stewart, 131 S.Ct. 1632 (second bracket in original). It follows, then, that the official who is now treated as an individual based on Ex parte Young should be subjected to the same statute-of-limitations period as any other private employer. Thus, because the FMLA expressly provides a cause of action for equitable relief, it is appropriate to apply the *617 statute of limitations in the FMLA instead of looking to an analogous state statute or the general federal statute of limitations for civil actions contained in 28 U.S.C. § 1658(a).
For these reasons, we hold that the two-year statute of limitations period contained in the FMLA applies to reinstatement claims brought by state employees against state officials under § 2617(a)(1)(B).
B.
In an attempt to overcome the fact that he did not file his claim within the two-year limitations period required under the FMLA, Crugher says that he alleged a willful violation allowing him to take advantage of the FMLA’s three-year limitations period. This argument lacks merit.
Under our precedents, the central inquiry in determining whether a violation of the FMLA is willful is “whether the employer intentionally or recklessly violated the FMLA.” Hoffman v. Prof'l Med Team, 394 F.3d 414, 417 (6th Cir.2005). A plaintiff “must do more than make the conclusory assertion that a defendant acted willfully.” Katoula v. Detroit Entm’t, LLC, 557 Fed.Appx. 496, 498 (6th Cir.2014).[9] Indeed, “[a]s we have explained in a non-FMLA context, although conditions of a person’s mind may be alleged generally, ‘the plaintiff still must plead facts about the defendant’s mental state, which, accepted as true, make the state-of-mind allegation ‘plausible on its face.’ ” Id. (quoting Republic Bank & Trust Co. v. Bear Steams & Co., 683 F.3d 239, 247 (6th Cir.2012)).
Here, Crugher’s complaint is devoid of any allegations supporting a finding of willfulness. The allegations in the eom-plaint, if accepted as true, only establish a causal connection between Crugher’s termination and his FMLA leave. There are no factual allegations that Prelesnik, or any other MDOC employee, acted intentionally or recklessly to violate Crugher’s rights under the FMLA. At best, the complaint can be read to state a claim that MDOC employees were negligent in interpreting Crugher’s rights under the FMLA as they interrelated with his use of sick leave. This is not enough to support a finding of willfulness.
C.
Alternatively, Crugher says that the district court erred in denying his motion to amend to allege willfulness. Crugher says that had he been able to amend the complaint, he would have supported his allegations of willfulness with an e-mail authored by Prelesnik in 2007 when he was employed as warden of the Richard A. Handlon Correctional Facility. In the e-mail Prelesnik sent to department heads, he stated:
Time and attendance has once again become a problem on the part of some staff. I am directing all supervisors to monitor staffs patterns of sick leave and or annual leave abuse ... I do not like the negative approach but I intend to hold abusers accountable. Supervisors are to use progressive discipline to help resolve this problem.
Personnel will monitor abuse of the family medical act ... We will be asking the medical provider if the pattern of use is consistent with the employees medical need. We will repeat this process ever[y] thirty days as the employee renews the leave ...
*618 Medical appointments must be made thirty days in advance of use and given to the supervisors. The family medical act allows the employer to know 30 days in advance of scheduled medical appointments to allow the employer to plan its operations. Last minute call in for a medical appointment will not qualify under the family medical act.
Unfortunately for Crugher, even if he were permitted to amend his complaint to add facts relevant to Prelesnik’s e-mail, he fails to establish a plausible claim of willfulness. First, the substance of the e-mail does not support a finding of willfulness. The e-mail merely shows that Prelesnik was attempting to limit abuses of FMLA leave. Second, the e-mail does not relate to anything done at ICF relating to Crugher. Therefore, as the district court correctly found, allowing Crugher to amend his complaint would be futile.
IV.
For the reasons stated above, we AFFIRM the district court’s opinion.

. The interim employee rating is not signed or dated, but it refers to Crugher's non-compli-anee with the employee handbook as late as October 20, 2010.

.Crugher denies receiving the document placing him back on interim rating for 180 days. The complaint states that "[t]here is question as to whether [Crugher] was ever actually placed on this second Interim Rating, or whether it was considered and never acted upon.”

. Crugher believes that he was not given this document.

. The court does not address this aspect of the district court's holding because it is not necessary to the resolution of this appeal.

.Ex parte Young created an exception to a state’s sovereign immunity — a legal fiction— "that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign-immunity purposes.” Va. Office for Prot. and Advocacy v. Stewart, - U.S. -, 131 S.Ct. 1632, 1638, 179 L.Ed.2d 675 (2011) (citation omitted).

. Four justices joined in the opinion. Justice Scalia concurred in the judgment.

. Crugher sometimes refers to his claim as a “Diaz " claim.

. The dissent relies on Chase Bank USA, N.A. v. City of Cleveland, 695 F.3d 548, 554 (6th Cir.2012), for the proposition that Ex parte Young recognized an implied cause of action under the Supremacy Clause. Chase Bank, however, identified only one explanation of causes of action in suits pursuant to Ex parte Young, and it expressly recognized that these questions are a “matter of debate.” Id. at 554 n. 4. Additionally, Chase Bank involved a question of federal preemption. Even if the Supremacy Clause did create an implied cause of action in such suits, Chase Bank simply does not indicate that it creates a cause of action where a federal statute expressly provides the plaintiff a cause of action for equitable relief.

. Although in Ricco v. Potter, 377 F.3d 599 (6th Cir.2004) we held that a conclusory statement of willfulness was sufficient to survive a motion to dismiss, Ricco predated Iqbal and Twombly. See Katoula, 557 Fed.Appx. at 498 n. 1.