In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-2833

CINDY BARRETT,

*Plaintiff-Appellant,*

*v.*

ILLINOIS DEPARTMENT OF CORRECTIONS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 12-CV-2024 — **Michael P. McCuskey**, *Judge.*

ARGUED SEPTEMBER 15, 2014 — DECIDED OCTOBER 20, 2015

Before FLAUM, KANNE, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Employees in the Illinois Department of Corrections ("IDOC") can be fired if they accumulate 12 unauthorized absences from work. Under IDOC's absenteeism policy, unauthorized absences accrue on an employee's record but are automatically expunged if the employee has a clean attendance history for a period of 24 consecutive months.

Cindy Barrett was fired from her job at IDOC in October 2010 after accumulating 12 unauthorized absences over a period of seven years. She claims that three of these absences—on December 15, 2003; December 22, 2004; and August 10, 2005—were for family or medical care and thus were protected by the Family and Medical Leave Act ("FMLA" or "the Act"), 29 U.S.C. §§ 2601 *et seq*. In January 2012 she sued IDOC for violating her rights under the Act. The district court concluded that the suit was time-barred and entered judgment for IDOC.

We affirm. An FMLA suit must be filed "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." *Id.* § 2617(c)(1). Here, the alleged FMLA violations occurred, and the limitations period began to run, when IDOC denied Barrett's requests for leave and classified the three contested absences as unauthorized—*not*, as she contends, when she was fired years later as a consequence of her overall attendance record.

## I. Background

In December 1995 Barrett began work at IDOC as an account technician. At that time IDOC maintained a system of progressive discipline for repeat unauthorized absences. Disciplinary measures ranged from an oral reprimand to suspensions of increasing duration, and after ten unauthorized absences, the employee could be fired. Unauthorized absences accrued on the employee's record until the employee went two years without receiving one; at that point the record was expunged.

Barrett's first unauthorized absence occurred on December 15, 2003. She contends that this absence was one of three that were FMLA protected and thus should not have been classified as unauthorized.

More specifically, Barrett alleges that on December 14, 2003, she was admitted to the emergency room with pneumonia. Following doctor's orders, she called in to work and asked to use sick leave for the following day. When she returned to work on December 16, she gave her supervisor a copy of her diagnosis and her hospital wristband, but she was told that she lacked sufficient sick leave to cover her request. On January 13, 2004, she went before the Employee Review Board to challenge this absence. Barrett furnished a work-release form from her doctor recommending that she take off work on December 15. Nevertheless, she was found "guilty" of being absent without authorization and received a verbal reprimand.

Barrett does not contest her second, third, and fourth unauthorized absences. Her fifth unexcused absence occurred on December 22, 2004. The previous day, Barrett's daughter was hospitalized after experiencing pre-term labor, and that night Barrett notified her supervisor that she would miss work the following day to attend to her daughter. She was indeed absent from work the next day. When she returned on December 23, she completed paperwork explaining her absence. At a hearing before the Employee Review Board on January 14, 2005, she was again found "guilty" of an unauthorized absence because she did not have any sick leave available. Under the attendance policy then in effect, Barrett received a three-day "paper suspension," meaning she still reported for work and suffered no lost wages.

Barrett's sixth unauthorized absence occurred on August 10, 2005, when she left work for physical therapy. On September 28, 2005, the Employee Review Board found her "guilty" of an unauthorized absence and imposed another paper suspension, this time for five days. She lost no work time or wages.

Barrett does not contest her seventh and eighth unauthorized absences, but the latter bears mentioning for another reason. In October 2007 Barrett was suspended for three days after accumulating an eighth unauthorized absence on October 3. Under the attendance policy in place at the time, this suspension was not merely "on paper" but was actually enforced. Barrett suffered three days' lost hours and wages.

In September 2008 IDOC and its employees' union negotiated and adopted a more lenient attendance policy. Employees were now subject to termination after accumulating 12 (rather than 10) unauthorized absences, and all suspensions would be "on paper" until the employee's eleventh unexcused absence. The expungement feature of the policy—erasing accrued unauthorized absences after a clean attendance record for 24 consecutive months—remained in place.

Barrett does not contest her ninth, tenth, eleventh, or twelfth unauthorized absences, the last of which occurred on May 14, 2010. On September 30, 2010, Barrett was suspended without pay pending termination for excessive absenteeism. She was fired on October 15, 2010.

Barrett sought review before the Illinois Civil Service Commission. She did not raise an FMLA argument at the hearing. (Indeed, she never raised the FMLA with her su-

pervisors or before the Employee Review Board either.) An administrative law judge recommended that the termination be sustained. The Commission adopted that recommendation, and Barrett did not pursue further review in Illinois state court.

Instead, on January 27, 2012, she sued IDOC in federal court for violating her rights under the FMLA. At the summary-judgment stage, the district court concluded that the suit was barred by the FMLA's two-year statute of limitations. § 2617(c)(1). Barrett had urged the court to find that the limitations period began to run when her employment was terminated on October 15, 2010. If the limitations clock started on that day, the suit was timely; she filed it 17 months later, within the two-year period. IDOC maintained, on the other hand, that the alleged FMLA violations accrued many years earlier, when Barrett was denied leave for each of the three absences she now claims were statutorily protected.

In a thorough opinion, the district judge agreed with IDOC, found the suit untimely, and granted IDOC's motion for summary judgment. *See Barrett v. Ill. Dep't of Corr.* (*"Barrett I"*), 958 F. Supp. 2d 984 (C.D. Ill. 2013). This appeal followed.

## II. Discussion

Resolving this appeal requires us to interpret and apply the FMLA's statute of limitations in the context of an absenteeism policy based on a system of progressive discipline.

This is a legal question of first impression in this circuit.[1] Our review is de novo. *James v. Hyatt Regency Chi.*, 707 F.3d 775, 779 (7th Cir. 2013) ("We review a district court's grant of summary judgment *de novo*."); *Breneisen v. Motorola, Inc.*, 656 F.3d 701, 704 (7th Cir. 2011) ("A district court's interpretation of a federal statute such as the FMLA is a question of law which we review *de novo*.").

We begin with the statutory text. The FMLA provides that "an action may be brought under this section not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought."[2] § 2617(c)(1). To determine when the claim accrued, the statute tells us to identify the "last event" constituting the alleged FMLA violation.

As relevant here, the FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of

---

[1] There is little authority on this question elsewhere, and it points in divergent directions. *Compare Reed v. Lear Corp.*, 556 F.3d 674, 681 (8th Cir. 2009) (holding that "[a]n FMLA violation occurs when an employer improperly denies a request for leave[,]" not when the employee is later fired for excessive absenteeism), *and Maher v. Int'l Paper Co.*, 600 F. Supp. 2d 940, 950 (W.D. Mich. 2009) (same), *with Butler v. Owens-Brockway Plastics Prods., Inc.*, 199 F.3d 314, 317 (6th Cir. 1999) (holding that a plaintiff who was fired for excessive absenteeism may challenge her termination under the FMLA even though the limitations period for the two absences she claimed were FMLA protected had long since expired). Both *Reed* and *Butler*—the two appellate decisions—are thinly reasoned; *Butler* does not even mention the text of the FMLA's statute of limitations. We find the out-of-circuit caselaw unhelpful.

[2] For willful violations, the limitations period is extended to three years. *See* 29 U.S.C. § 2617(c)(2). Barrett does not allege that IDOC willfully violated the FMLA.

or the attempt to exercise, any right provided under this subchapter."[3] 29 U.S.C. § 2615(a)(1). One such right—the one at issue in this case—is the employee's entitlement to "a total of 12 workweeks of leave during any 12-month period" for the purpose of family and medical care. *Id.* § 2612(a)(1). Because the FMLA does not expressly define "leave," we apply its ordinary meaning. In the workplace context, "leave" equates to "an authorized absence or vacation from duty or employment." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1287 (1993). To prove an FMLA claim based on a denial of qualifying leave, a plaintiff must show some impairment of his rights and resulting prejudice. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 90 (2002).

Barrett alleges that IDOC improperly denied leave on three specific occasions.[4] More particularly, she claims that three of her 12 unexcused absences—December 15, 2003; December 22, 2004; and August 10, 2005—were for qualifying family or medical leave, but IDOC mistakenly classified them as unauthorized. On each of these occasions, Barrett notified her supervisor of her impending absence, was absent without authorization, and later went before the Employee Review Board to challenge IDOC's decision to treat the absence as unexcused. Each time the Board rejected Barrett's request for leave, recorded the absence as unauthor-

---

[3] Another subsection makes it unlawful for an employer to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" under the statute. 29 U.S.C. § 2615(a)(2). This subsection is not at issue here.

[4] She does not allege that IDOC unlawfully "interfered with" or "restrained" the exercise of her FMLA rights. *Id.* § 2615(a)(1).

ized, and imposed some form of discipline (a reprimand, a three-day paper suspension, and a five-day paper suspension). Barrett maintains that by classifying these absences as unauthorized, IDOC violated the FMLA. Her claim, in short, is one for denial of leave guaranteed to her by the Act.

When an FMLA plaintiff alleges that his employer violated the Act by denying qualifying leave, the last event constituting the claim ordinarily will be the employer's rejection of the employee's request for leave. So it is here. Each time the Employee Review Board ruled against Barrett, an actionable FMLA claim accrued and the limitations clock started to run. With each ruling Barrett's FMLA rights were impaired and she suffered prejudice: her request for leave was wrongly denied (or so she alleges) and she was harmed by the classification of her absence as unauthorized, which increased the number of unexcused absences on her record.[5]

It's immaterial that the denial of leave came in the form of a retrospective hearing rather than a rejection of a prospective request for leave. If IDOC had denied a request for leave *before* she was absent, Barrett would have had a viable claim that IDOC denied her attempt to exercise a right guaranteed to her by the FMLA. The fact that the absences were classified as unauthorized in an after-the-fact hearing does not change the nature of the alleged FMLA violation. In both

---

[5] She also suffered a reprimand and two paper suspensions, but the real prejudice at issue here is the classification of these absences as "unauthorized." Moreover, Barrett's eighth unauthorized absence—in October 2007—resulted in an actual suspension and loss of three days' wages, so even if "prejudice" is measured from this later date, the suit is still untimely.

scenarios the employer's denial of the employee's request for leave is the "last event constituting the alleged violation" on which the action is based.

So the two-year limitations period began to run each time the Board ruled against Barrett's request for leave to cover the specific absences she challenges in this suit. Those rulings came at the conclusion of hearings held on January 13, 2004; January 14, 2005; and September 28, 2005. Her suit—filed in January 2012—was several years too late.

The district judge went beyond the text of § 2617(c)(1) to draw an analogy between the FMLA and Title VII. *See Barrett I*, 959 F. Supp. 2d at 992–93. We're skeptical that the analogy is particularly useful or appropriate here. The FMLA is fundamentally *prescriptive* in nature; it accords a benefit to employees. Title VII is fundamentally *proscriptive*; it prohibits discrimination in employment on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. We've noted this distinction before, though not in the context of a statute-of-limitations question. *See Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 712 (7th Cir. 1997) (rejecting the *McDonnell Douglas* burden-shifting paradigm as inapposite to benefit-denial claims under the FMLA). In *Diaz* we explicitly distinguished the basic FMLA inquiry— whether an employer has "honor[ed] statutory entitlements" regardless of having "treated all employees identically"— from the basic Title VII inquiry—"whether the employer treated one employee worse than another on account of

something (race, religion, sex, age, etc.) that a statute makes irrelevant."[6] *Id.*

This distinction is evident in the different language of the two statutory schemes. Under Title VII an aggrieved employee must file a claim "within one hundred and eighty days after *the alleged unlawful employment practice occurred*." 42 U.S.C. 2000e-5(e)(1) (emphasis added). An "unlawful employment practice" is an act of discrimination based on a protected characteristic and resulting in a "refus[al] to hire," "discharge," or "depriv[ation] … of employment opportunities." *Id.* § 2000e-2(a). As such, a Title VII claim requires some "materially adverse employment action." *Lewis v. City of Chicago*, 496 F.3d 645, 652 (7th Cir. 2007).

The FMLA uses different language. An aggrieved employee must bring an FMLA claim "not later than 2 years after the date of *the last event constituting the alleged violation for which the action is brought*." § 2617(c)(1) (emphasis added). The substantive provision at issue here prohibits an employer from interfering with, restraining, or denying an

---

[6] In analogizing between Title VII and the FMLA, the district court noted that "[b]oth utilize the same *McDonnell Douglas* burden-shifting paradigm." *Barrett v. Ill. Dep't of Corr.* ("*Barrett I*"), 958 F. Supp. 2d 984, 990 (C.D. Ill. 2013). But that is true *only* for claims brought under the *discrimination* component of the FMLA, which as we've noted, *supra* at p. 7 n.3, prohibits employers from discharging or discriminating against any person for opposing a practice made unlawful by the FMLA. § 2615(a)(2). That is not this case. Barrett has not been discriminated against for asserting her FMLA rights. Indeed, she never explicitly asserted her statutory rights at all prior to this litigation. Thus, her FMLA action is not for discrimination or retaliatory discharge but for "denial of benefits."

employee's exercise of *or attempt to exercise* any rights protected by the Act. *See* § 2615(a)(1). In a claim for violation of § 2615(a)(1), then, there is no requirement of a "materially adverse employment action." Rather, as we've noted, in a denial-of-benefits claim, the Supreme Court has held that an FMLA plaintiff must show only some impairment of his rights and resulting prejudice. *Ragsdale*, 535 U.S. at 90.

But even assuming that the analogy to Title VII is appropriate in this context, Barrett could not prevail. The limitations period for a Title VII claim runs from the date the unlawful employment practice occurred, and the Supreme Court has held that for claims based on "discrete acts" of retaliation or discrimination, the "discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). This rule applies even if an old, unchallenged discriminatory act has a present effect on an employee's status in a seniority system, a progressive discipline system, or some other dynamic employment scheme. "A discriminatory act which is not made the basis for a timely charge … is merely an unfortunate event in history which has no present *legal* consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977) (emphasis added). So the "discrete act" that starts the Title VII limitations clock is the discriminatory decision itself, *not* the "*consequences* of the act[]" that may materialize down the road. *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (citation omitted).

There is an exception to this general rule. Under the "continuing violation" doctrine, a Title VII plaintiff may recover for otherwise time-barred conduct that is part of a single, ongoing unlawful employment practice if at least one

related act occurs during the limitations period. *See Morgan*, 536 U.S. at 116–18. As the Supreme Court clarified in *Morgan*, however, this doctrine is limited to claims of hostile work environment. "Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Id.* at 115. "[T]he theory is that '[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Swanson v. Village of Flossmoor*, 794 F.3d 820, 826 (7th Cir. 2015) (quoting *Morgan*, 536 U.S. at 117). As such, a Title VII claim for hostile work environment is timely "as long as 'any act falls within the statutory time period,' even if the [claim] encompasses events occurring prior to the statutory time period." *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) (quoting *Morgan*, 536 U.S. at 120).

Barrett's claim is not analogous to a claim for hostile work environment. She alleges that she was wrongly denied family or medical leave on three specific occasions. On the rationale of *Morgan*, these are "discrete acts"—independently actionable violations of the FMLA—and each one triggered its own limitations clock.

Still, Barrett insists that although she *could have* filed suit at the moment she was denied leave, she wasn't *required* to file suit until several years later, when she was fired for accumulating too many unauthorized absences. The termination of her employment, she says, was the last event constituting the FMLA violation.

There are two problems with this argument. First, it assumes that there can be more than one last event under § 2617(c)(1). That's not a reasonable reading of the statute. Second, Barrett's argument is really a plea for a tolling rule

that would hold the limitations period in abeyance indefinitely and revive a stale denial-of-leave claim years later, when the employee is fired based in part on the contested absence. Nothing in § 2617(c)(1) supports such an open-ended tolling rule.[7]

Barrett objects that the result compelled by the statutory text leaves the FMLA toothless in a workplace that operates under a no-fault absenteeism policy and a system of progressive discipline. She says it's impractical to sue each time leave is wrongly denied, especially when the immediate consequence is nothing more than a reprimand or paper suspension and another unauthorized absence logged on the employee's absenteeism record. Maybe so.

But the FMLA contains both judicial and administrative remedies in its enforcement edifice. *See* 29 U.S.C. § 2617(a), (b). Under the Secretary of Labor's authority to enforce the FMLA, the Wage and Hour Division "investigates complaints," endeavors to "satisfactorily resolve[]" violations, and "bring[s] action in court to compel compliance." U.S. Dep't of Labor, Wage & Hour Division, *Fact Sheet #77B: Protection for Individuals Under the FMLA*, http://dol.gov/whd/regs/compliance/whdfs77b.pdf (December 2011). This bifur-

---

[7] Under Barrett's proposed rule, an IDOC employee who was denied leave for her first absence could theoretically wait nearly 24 years before she would have to litigate that claim. And the only upward boundary on that timeframe is IDOC's policy of expunging unauthorized absences after an unblemished 24 months. Employers with a longer reset period—or those who keep a permanent running tally—would face the prospect of ancient FMLA claims cropping up decades after the violation is alleged to have taken place. That result is not only unreasonable but wholly inimical to the purpose of a statute of limitations.

cated enforcement structure suggests that Congress was aware that private litigation may not always be the most practical or desirable means of vindicating rights under the FMLA.[8] Seen in this light, what Barrett portrays as a roadblock to litigating her claim is instead an intentional detour away from federal court and toward a federal agency.

For the foregoing reasons, Barrett's FMLA suit was time-barred, and the district court properly granted summary judgment for IDOC.

AFFIRMED.

---

[8] Empirical evidence suggests that the overwhelming majority of FMLA claimants elect administrative resolution over private litigation. *See* Ben James, *Rising Tide Of FMLA Claims Unlikely To Recede, Attys Say*, LAW360 (Aug. 13, 2014, 7:03 PM), http://www.law360.com/articles/566997; U.S. Dep't of Labor, Wage & Hour Division, *Bridge to Justice: Wage and Hour Connects Workers To New ABA-Approved Attorney Referral System*, http://www.dol.gov/whd/resources/ABAReferralPolicy.htm (September 2014).