In the

# United States Court of Appeals
## For the Seventh Circuit

No. 17-2621

SARA SAMPRA,

*Plaintiff-Appellant,*

*v.*

UNITED STATES DEPARTMENT OF TRANSPORTATION,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 16-CV-4391 — **Ronald A. Guzmán**, *Judge.*

ARGUED FEBRUARY 6, 2018 — DECIDED APRIL 24, 2018

Before WOOD, *Chief Judge*, and KANNE and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Sara Sampra sued her employer, the United States Department of Transportation, alleging that it interfered with her rights under the Family and Medical Leave Act by reassigning her to a different position after she returned from childbirth leave. The district court granted summary judgment for the defendant on the merits, finding that Sampra was offered essentially the same position upon

her return from leave. Sampra has appealed. We affirm, though on the different ground that Sampra's lawsuit is time-barred. We do not reach the merits. Sampra failed to file her complaint within the applicable two-year statute of limitations. The more forgiving three-year statute of limitations does not apply because Sampra failed to provide evidence that the department willfully violated her FMLA rights.

I.  *Factual and Procedural Background*

From October 2009 to April 2014, Sampra was an electrical engineer with the Federal Aviation Administration, an agency within the Department of Transportation. Electrical engineers who are assigned to the field in the FAA's Central Service Area typically do not work out of an office; they are assigned to field positions at airports across the central portion of the United States. The parties refer to these employees as "field engineers."

Initially, Sampra was assigned to a field position at Midway Airport in Chicago. Her supervisor eventually assigned her to oversee technical support services contract work releases for the Chicago office. Overseeing these work releases involved submitting project requirements to an outside contractor, which in turn would report back to Sampra with its understanding of the project, cost estimates, and a timeframe for completion. Sampra would then review and authorize the project proposal. Managing the work releases required little to no field work, so in that role Sampra spent nearly all of her time in the office. She retained the same job title, though, and her job description continued to require up to 100% travel and field work.

Sampra's FMLA leave began on January 6, 2014 and lasted until she was ready to return to work on March 10. While she was on leave, the supervisor who had given her the desk assignment was transferred and a new supervisor, Matthew Sibert, took over. While Sampra was still on leave, Sibert assigned to himself the task of overseeing the work releases that Sampra had overseen. Sibert testified that he could perform in one hour per week the work that Sampra had been doing full-time, that he believed that overseeing the work releases was not appropriate work for a full-time field engineer, and that he had never assigned a field engineer working under him to manage those work releases.

On March 21, 2014, shortly after Sampra's return, Sibert initially assigned her to a field project at Chicago's O'Hare Airport. That project would have required Sampra to work on an aviation runway overnight, from 8:00 p.m. to 6:00 a.m. But Sampra never actually worked the overnight assignment at O'Hare. For the first three weeks of the assignment, Sibert allowed Sampra to work regular daytime hours so that she could secure necessary childcare. Before she would have had to start the overnight assignment at O'Hare, Sampra requested reassignment to the position of drafting coordinator. On April 11, Sibert notified Sampra that effective April 20 she would be transferred to the position of drafting coordinator. The drafting coordinator position is in a lower pay band than electrical engineer, but Sampra retained her electrical engineer salary.

Sampra filed this lawsuit under the FMLA on April 18, 2016, a little over two years after her assignment to work at O'Hare. In support of her claim, Sampra highlighted two key differences between her positions before and after her FMLA

leave. First, the location of her work changed from an office to an aviation runway that lacked access to a toilet, let alone a lactation room. Second, her shift changed from regular daytime hours to overnight hours. Claiming that her former supervisor had "set a precedent" by assigning her to oversee the work releases from the office, Sampra argued that she was entitled to reinstatement to an equivalent assignment upon return from FMLA leave. The district court granted summary judgment for the department on the merits.

II. *Analysis*

We do not reach the merits of Sampra's FMLA interference claim because the undisputed facts show that her claim is barred by the statute of limitations. A plaintiff must bring an FMLA claim "not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1); *Barrett v. Illinois Dep't of Corrections*, 803 F.3d 893, 898 (7th Cir. 2015) (affirming summary judgment for employer based on FMLA statute of limitations). If the employer acted willfully, however, the statute of limitations is extended to three years. 29 U.S.C. § 2617(c)(2). This unusual statute of limitations follows the model of the Fair Labor Standards Act of 1938. See 29 U.S.C. § 255(a).

The FMLA statute of limitations clock begins to run from the "last event constituting the alleged violation." 29 U.S.C. § 2617(c)(1). The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the statute. § 2615(a)(1). An employee who takes FMLA leave is entitled, upon return, to be restored to the position she previously held

or to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment. § 2614(a)(1)(A), (B).

Sampra's lawsuit is untimely because she filed her complaint on April 18, 2016, more than two years after the statute of limitations clock began running. The clock started on March 21, 2014 when Sampra's supervisor assigned her to work in the field at O'Hare—the assignment that Sampra claims violated her FMLA rights. That assignment is analogous to the denial of FMLA leave that started the clock in *Barrett*. 803 F.3d at 897 (identifying denial of leave request as "the last event constituting the claim"); see also *Crugher v. Prelesnik*, 761 F.3d 610, 614 (6th Cir. 2014) (clock started running on FMLA retaliation claim on date of employee's termination); *Reed v. Lear Corp.*, 556 F.3d 674, 682 (8th Cir. 2009) (clock started running on FMLA interference claim when employer gave employee second letter denying FMLA leave rather than later date of termination); *Rutherford v. Peoria Public Schools Dist. 150*, 228 F. Supp. 3d 843, 852–53, 853 n.10 (C.D. Ill. 2017) (clock started running on FMLA interference claim when employer notified employee that employee had abandoned his job and employer did not intend to reinstate him), citing and distinguishing *Barrett*, 803 F.3d at 897; *Deka v. Countryside Ass'n for People With Disabilities, Inc.*, 140 F. Supp. 3d 698, 705 (N.D. Ill. 2015) (clock started running on FMLA interference and retaliation claims on date of employee's termination); *Ryan v. Pace Suburban Bus Div. of Regional Transp. Auth.*, 837 F. Supp. 2d 834, 837 (N.D. Ill. 2011) (same). Sampra does not contest the department's contention that the statute of limitations

began running on March 21, 2014 (as opposed to, say, the effective date of the most onerous aspects of the new assignment to the overnight schedule).[1]

The more generous three-year statute of limitations in 29 U.S.C. § 2617(c)(2) does not apply because Sampra has not offered evidence sufficient to support a finding that the department willfully violated her FMLA rights. The FMLA does not define the term "willful," see § 2611, and the Supreme Court has not yet defined the term under § 2617(c)(2). But in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988), the Supreme Court explained the meaning of "willful" under the analogous statute of limitations in the Fair Labor Standards Act. *McLaughlin* held that to apply the three-year limitations period for "willful" violations of the FLSA, the employer must have known that, or shown reckless disregard for whether, its conduct was prohibited by the statute. *Id.* at 133, 135. Distinguishing "merely negligent" from "willful," *McLaughlin* observed that in common usage, "willful" is con-

---

[1] The department briefed the statute of limitations in its summary judgment motion in the district court. In response, Sampra presented no evidence or argument supporting her allegations of willfulness. Sampra addressed the statute of limitations issue for the first time in her appellate reply brief. Because the district court did not rely on the statute of limitations defense, Sampra did not need to address it in her opening appellate brief. But the department raised the issue properly in the district court, and that was sufficient to require Sampra to offer any evidence she could to avoid the defense. On appeal, the department is entitled to defend the district court's judgment on this alternative ground, see *Luna v. United States*, 454 F.3d 631, 635 (7th Cir. 2006), and Sampra was entitled to address the issue in her reply brief. We address the statute of limitations issue on the evidentiary record the parties built in the district court.

sidered synonymous with words such as "voluntary," "deliberate," and "intentional." *Id.* at 133. *McLaughlin* expressly rejected the Fifth Circuit's test that had required the employer to know only that the FLSA "was in the picture" for the violation to be considered "willful." 486 U.S. at 132–33, 134 ("the *Jiffy June* standard of willfulness—a standard that merely requires that an employer knew that the FLSA 'was in the picture'—virtually obliterates any distinction between willful and nonwillful violations").

Other circuits have held that the *McLaughlin* willfulness standard for FLSA claims applies as well to FMLA claims. See, e.g., *Bass v. Potter*, 522 F.3d 1098, 1103–04 (10th Cir. 2008); *Hoffman v. Professional Med Team*, 394 F.3d 414, 417–18 (6th Cir. 2005); *Porter v. New York University School of Law*, 392 F.3d 530, 531–32 (2d Cir. 2004); *Hanger v. Lake County*, 390 F.3d 579, 583 (8th Cir. 2004); *Hillstrom v. Best Western TLC Hotel*, 354 F.3d 27, 33 (1st Cir. 2003). We agree that the *McLaughlin* definition of "willful" under the FLSA applies to the FMLA's use of "willful" in § 2617(c)(2). To benefit from the three-year statute of limitations in § 2617(c)(2), a plaintiff must show that her employer either knew the FMLA prohibited its conduct or showed reckless disregard for whether it did. *McLaughlin*, 486 U.S. at 133.

Applying the *McLaughlin* standard here, Sampra has not offered evidence that would allow a reasonable trier of fact to find that Sibert either knew his conduct would violate the FMLA or showed reckless disregard. While Sibert concedes that he knew the FMLA was in the picture, *McLaughlin* shows that simple awareness that the FMLA "was in the picture" is not sufficient to show willfulness. *Id.* The undisputed evidence shows that Sibert believed he was complying with the

FMLA by restoring Sampra to the same job title she had held before her FMLA leave, and at the same pay. At worst, Sibert might have acted negligently when he failed to consult the FMLA regulations; there is no evidence that, as required by the *McLaughlin* standard, he showed reckless disregard for whether his conduct was prohibited by the FMLA. See, e.g., *Deka*, 140 F. Supp. 3d at 705 (finding plausible allegation of willfulness where employee with serious illness was terminated before going on FMLA leave and after employer repeatedly scoffed at its FMLA duties). We also cannot ignore the fact that a United States District Judge agreed with Sibert that restoring Sampra to her prior position, job description, and salary as a field engineer did not violate her FMLA rights. Because Sampra failed to offer evidence sufficient to rely on the three-year limitation for willful violations, her FMLA interference claim is barred by the two-year statute of limitations.

The judgment of the district court is

AFFIRMED.