RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0108p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

KOLA HASANAJ,

*Plaintiff-Appellant*,

*v.*

DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT; STEVEN RHODES; CASSANDRA WASHINGTON; CINDY LANG; BRENDA CARETHERS; LAURI WASHINGTON,

*Defendants-Appellees*.

No. 21-1488

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Flint.
No. 4:19-cv-12693—Matthew F. Leitman, District Judge.

Argued: January 27, 2022

Decided and Filed: May 19, 2022

Before: SUTTON, Chief Judge; GUY and DONALD, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** Shanta Driver, DRIVER, SCHON & ASSOCIATES PLC, Detroit, Michigan, for Appellant. Cynthia M. Filipovich, CLARK HILL PLC, Detroit, Michigan, for Appellee Steven Rhodes. Phyllis Hurks-Hill, DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT, Detroit, Michigan, for Detroit Public Schools Appellees. **ON BRIEF:** Shanta Driver, DRIVER, SCHON & ASSOCIATES PLC, Detroit, Michigan, for Appellant. Cynthia M. Filipovich, CLARK HILL PLC, Detroit, Michigan, Jennifer K. Green, CLARK HILL PLC, Birmingham, Michigan, for Appellee Steven Rhodes. Phyllis Hurks-Hill, DETROIT PUBLIC SCHOOLS COMMUNITY DISTRICT, Detroit, Michigan, for Detroit Public Schools Appellees.

GUY, J., delivered the opinion of the court in which SUTTON, C.J., joined. DONALD, J. (pp. 22–26), delivered a separate opinion concurring in part and dissenting in part.

---------------

**OPINION**

---------------

RALPH B. GUY, JR., Circuit Judge.  Kola Hasanaj, a teacher certified in Michigan, was employed by the Detroit Public Schools Community District (District) as a teacher for ten years under a series of contracts.  After about seven years, the District stopped sending contract renewal notices to Hasanaj.  He received "ineffective" ratings in the three years that followed, so the District dismissed him as required by state law.  *See* Mich. Comp. Laws Ann. § 380.1249(2)(j).  Hasanaj sued the District and various school officials for alleged violations of state and federal law, including denial of procedural due process under the Fourteenth Amendment.  He alleges that he and defendants "acted with the understanding that he had tenure," the evaluation ratings violated Michigan's statutory evaluation system, and now he cannot use his certificate to teach in Michigan.  At the pleading stage, the district court dismissed the lawsuit.

Because Hasanaj has not satisfied Michigan's statutory tenure system, he has no protected property interest in continued employment.  Nor has he been deprived of his liberty to pursue his profession because he still holds a valid Michigan certificate to teach.  Finding that Hasanaj's other claims also fail under the Family Medical Leave Act and state law, we affirm.

**I.**

In Michigan, tenure for teachers is controlled by the Teachers' Tenure Act (Tenure Act), Mich. Comp. Laws Ann. §§ 38.71 to 38.191, and performance evaluations and other personnel decisions for teachers are primarily governed by the Revised School Code, *id.* §§ 380.1 to 380.1095.  These two statutory schemes form the foundation for the dispute in this case.

**A.**

*Tenure.*  For public-school teachers in Michigan, "[c]ontinuing tenure is held only in accordance with" the Tenure Act.  Mich. Comp. Laws Ann. § 38.91(1).  The Tenure Act provides that a teacher "is considered to be on continuing tenure" only "[a]fter the satisfactory

completion of the probationary period." *Id.*; *see also* § 38.81(1).  To complete the probationary period, a teacher must: (1) serve "at least 4 full school years of employment in a probationary period" and be "rated as highly effective on 3 consecutive annual year-end performance evaluations"; or (2) serve "at least 5 full school years of employment in a probationary period" and be "rated as effective or highly effective on his or her 3 most recent annual year-end performance evaluations."  § 38.83b(1)-(2); *see also* § 38.81(2).  Evaluations must comply with § 380.1249's requirements.  § 38.83a.

The probationary years are calculated using the "anniversary date" rule, under which "the probationary period begins with the initial date of employment and continues for" the required number of years until it "is completed on the [fourth or fifth] anniversary of the date of employment." *Breuhan v. Plymouth-Canton Cmty. Schs.*, 389 N.W.2d 85, 86 (Mich. 1986); *see* Mich. Comp. Laws Ann. § 38.75.  This rule "neither benefits nor penalizes teachers employed after the school year has begun" because each teacher "must simply serve the same probationary period" based upon their anniversary date of employment.  *Breuhan*, 389 N.W.2d at 87 n.3.

But not all teaching employment counts toward tenure.  A "teacher" under the Tenure Act, is defined as "a certificated individual employed for a full school year by any board of education or controlling board."  Mich. Comp. Laws Ann. § 38.71(1).  "Certificated," for "purposes of teacher tenure under the [Tenure Act]" means "any teacher who holds a Michigan teaching certificate, as defined by [Mich. Admin. Code R.] 390.1101, which is *valid for the position to which he or she is assigned*[.]"  Mich. Admin. Code R. 390.661(1) (emphasis added); *see* Mich. Comp. Laws Ann. § 38.72.  A certificate is valid for positions that match "the time period, grade level, and discipline area" (i.e., the "subject area") endorsed on the certificate.  *See* Mich. Admin. Code R. 390.1101(g), (aa); *see also id.* 390.1101(c), (k), (l), 390.1105(1), and 390.1117(1).  Accordingly, a teacher only accrues probationary years toward tenure when assigned to teach a subject endorsed on their teaching certificate.

"A teacher who is in a probationary period may be dismissed from his or her employment by the controlling [school] board at any time."  Mich. Comp. Laws Ann. § 38.83(2).

After obtaining tenure, a teacher enjoys certain protections. For instance, a tenured teacher: may be discharged or demoted "only for a reason that is not arbitrary or capricious and only as provided in [the Tenure Act]," § 38.101(1); and may request that a school district review a performance evaluation, *see* § 380.1249(2)(l). And only a "teacher who has achieved continuing tenure status may appeal to the tenure commission any decision of a controlling board." § 38.121; *see also* § 38.104(1).

**B.**

*Performance Evaluations.* Michigan schools are required under § 380.1249, to evaluate "teachers" using an evaluation system that meets specified minimum requirements.[1] These evaluations are important because schools must use "the evaluations, at a minimum, to inform" certain employment decisions, including "[r]emoving ineffective *tenured and untenured teachers* and school administrators after they have had ample opportunities to improve, and ensuring that these decisions are made using rigorous standards and streamlined, transparent, and fair procedures." Mich. Comp. Laws Ann. § 380.1249(1)(d)(iv) (emphasis added).

Among the requirements in § 380.1249, teachers must receive "at least an annual year-end evaluation" using ratings of "highly effective, effective, minimally effective, or ineffective." § 380.1249(1)(c), (2)(a), (2)(g). Evaluations "must include classroom observations," § 380.1249(2)(e), "specific performance goals that will assist in improving effectiveness. . . , and any recommended training . . . that would assist the teacher in meeting these goals." § 380.1249(2)(c); *see also* § 38.83a. A teacher "who received a rating of minimally effective or

---

[1]For purposes of the teacher evaluation procedures in § 380.1249, a "teacher" is "an individual [1] who has a *valid Michigan teaching certificate* or authorization or who is engaged to teach under section 1233b; [2] who is employed, or contracted for, by a school district, intermediate school district, or public school academy; and [3] who is assigned . . . to deliver direct instruction to pupils in any of grades K to 12 as a teacher of record." Mich. Comp. Laws Ann. § 380.1249(8) (emphasis added). The regulations for the Revised School Code again supply the same definition for a "valid Michigan teaching certificate." *See* Mich. Admin. Code R. 390.1101(g), (aa). As such, Michigan's teacher evaluation requirements and procedures only apply to teachers assigned to teach a subject endorsed on their teaching certificate. *See generally* Mich. Comp. Laws Ann. §§ 380.1249, 38.83a.

The legislature made it clear that teachers may only teach certain subjects. Subject to exceptions not relevant here, a school district cannot permit a teacher to "teach in a grade or department of the school" for which the teacher "does not hold a valid teaching certificate," i.e., a certificate for the assigned grade and subject area. *See* §§ 380.1233(1), 380.1233b(1)-(2) (providing exceptions). In fact, if a teacher is "not *appropriately placed* under a valid certificate" after the State notifies the school official, "the school official is guilty of a misdemeanor punishable by a fine of $1,500.00 for each inciden[t]." § 388.1763(1), (6) (emphasis added).

ineffective in his or her most recent annual year-end evaluations" must receive a "midyear progress report" that includes "a written improvement plan" with "goals" and "training." § 380.1249(2)(d)(iii).

"[I]f a teacher is rated as ineffective on 3 consecutive annual year-end evaluations," the school district "shall dismiss the teacher from his or her employment." § 380.1249(2)(j). That requirement, however, "does not affect the ability of a school district . . . to dismiss a teacher from his or her employment *regardless of whether* the teacher is rated as ineffective on 3 consecutive annual year-end evaluations." *Id.* (emphasis added); *see also* § 38.83(2).

## II.

### A.

From 1998 to 2011, Hasanaj was employed as a substitute teacher at various high schools in the District. On October 10, 2006, Hasanaj obtained his standard teaching certificate from the State of Michigan, with subject endorsements for English and Bilingual in grades 6 to 12. He currently holds a valid professional teaching certificate (with the same endorsements), as well as a school administrator certificate for K-12 schools.

Each year in 2006 to 2011, Hasanaj was rated "good to excellent." Hasananj was rated "Minimally Effective," however, for the 2011–2012 school year.

Hasanaj became a "contract teacher" in 2011. At the end of each year, the District notified Hasanaj that he would be retained as a teacher for another year. According to Hasanaj, these notices are only sent to nontenured (probationary) teachers. After 2013, he alleges that the District stopped sending him a renewal notification. Going forward, Hasanaj claims "the parties acted with the understanding that [he] was a tenured teacher."

For the 2013–2014 school year, the District assigned Hasanaj to teach two classes within his certification area and four math classes outside his certification area. The assistant principal observed one of Hasanaj's classes in September 2013, assigning him ratings of "Minimally Effective" or "Effective." Hasanaj was later accused of misconduct and placed on administrative leave. When Hasanaj was exonerated and reinstated, he took medical leave under the Family

Medical Leave Act (FMLA).  The last day Hasanaj taught in the 2013–2014 school year was October 29, 2013.

Presumably while on FMLA leave, Hasanaj filed a complaint with the District's Office of Employee Relations in April 2014, alleging that the assistant principal spoke to him "daily" in a "demeaning and disrespectful manner in front of the students."  Hasanaj requested to be transferred to a different school and placed in his area of certification.  The District allegedly gave Principal Brenda Carethers the option to release Hasanaj to a different school.  But Principal Carethers declined and told Hasanaj that she needed a "spare body."  At the end of May 2014—while Hasanaj was still on long-term FMLA leave—the principal issued an "observation" evaluation, noting that Hasanaj "took a FMLA [*sic*] and has never returned even though he was scheduled to return to work."

In July 2014, Hasanaj received a letter from the District, rating him "Ineffective" for the 2013–2014 school year.  He received the maximum possible points for attendance and discipline, but he received zero points for the "performance" component based on Principal Carethers' evaluation.  Hasanaj unsuccessfully asked the District to rescind the evaluation.

For the 2014–2015 school year, Hasanaj taught sixth grade English at a different school. That year, he was rated "Ineffective."

As for the 2015–2016 school year, Hasanaj was transferred to another school.  In the beginning, he taught science and physical education (P.E.), even though he was not certified to teach either subject.  Principal Cindy Lang allegedly told Hasanaj to use "Google" to find his science lesson plans.  Principal Lang prepared a mid-year evaluation but rescinded it after Hasanaj and his union steward complained that he was teaching outside his certification area for the evaluation period.

Hasanaj did not teach much longer.  During his P.E. class, Hasanaj was injured when a ball hit his face in January 2016, and again less than a month later.  He took medical leave under the FMLA and did not teach for the remainder of the 2015–2016 school year.  At the end of the school year, Principal Lang submitted her evaluation of Hasanaj.  Although Hasanaj was not trained to create lesson plans in P.E. and was not asked to create lesson plans, Lang's evaluation

cited the absence of lesson plans.  Hasanaj was ultimately rated "Ineffective" for the 2015–2016 school year.

Lauri Washington, the executive director of the District's office of employee relations, compiled the materials related to Hasanaj's past three annual evaluations, reviewed the evaluations, and forwarded the file to the District's emergency manager, Steven Rhodes, for approval.

On September 16, 2016, Hasanaj received two letters from the District.  The first letter, dated September 6, 2016, was a "Notification of Termination" based upon Mich. Comp. Laws Ann. § 380.1249(2)(j), requiring dismissal because Hasanaj had received "Ineffective" ratings on three consecutive annual evaluations.  The letter summarized the allegations supporting each of the past three evaluations.  That supposedly was the first time Hasanaj was notified of the allegations underlying his poor rating for 2015–2016.  The second letter, dated September 12, 2016, informed Hasanaj of his right to appeal the District's decision to the Michigan State Tenure Commission (Tenure Commission).

Hasanaj alleges he has not obtained a teaching position after applying to ten to twelve school districts.  At least one school district has treated Hasanaj's three consecutive "Ineffective" ratings as "an automatic disqualification."

**B.**

*Administrative Proceedings.*  Challenging his termination, Hasanaj filed a claim of appeal with the Tenure Commission in October 2016.[2]  In the proceedings, "the parties stipulated that [Hasanaj] was a tenured teacher."  The Tenure Commission explained, however, that tenure is a threshold requirement to invoke its subject-matter jurisdiction, *see* Mich. Comp. Laws Ann. § 38.121; *Lipka v. Brown City Cmty. Schs.*, 271 N.W.2d 771, 773 (Mich. 1978), and such matters "cannot be decided by stipulation."

---

[2]On a Rule 12(b)(6) motion to dismiss, the Tenure Commission's proceedings are "matters of which a court may take judicial notice" without converting the motion to one for summary judgment.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see also United States v. Ferguson*, 681 F.3d 826, 834 (6th Cir. 2012) (adjudicatory proceedings related to "matters at issue" are subject to judicial notice under Fed. R. Evid. 201); *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016).

In the end, the Tenure Commission concluded that Hasanaj did not achieve tenure because, after subtracting any leaves of absence between October 10, 2006 (when he obtained his certificate) and February 1, 2016 (his last day of teaching), Hasanaj did not teach in his certified subject for a total of at least four years. As a result, after more than two years of proceedings, the Tenure Commission dismissed the appeal for lack of jurisdiction on May 3, 2019.

## C.

*Federal Court Litigation.* In September 2019, Hasanaj filed this lawsuit in federal court, (R. 1) naming as defendants: the District; the executive director for the division of human resources; the deputy executive director for the office of employee relations; emergency manager Rhodes (in his individual and official capacities); Principal Carethers; and Principal Lang. Seeking recission of his poor teaching evaluations, reinstatement, and monetary damages, Hasanaj asserted four claims: (1) deprivation of procedural due process under the United States Constitution and 42 U.S.C. § 1983, as well as the Michigan Constitution; (2) wrongful termination under *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880 (Mich. 1980), and in violation of public policy under *Suchodolski v. Michigan Consolidated Gas Co.*, 316 N.W.2d 710 (Mich. 1982); (3) retaliation for exercising rights under the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*; and (4) violation of the Michigan Whistleblowers' Protection Act (WPA), Mich. Comp. Laws Ann. § 15.361 *et seq.*

Defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6), with Rhodes moving separately. At the hearing, Hasanaj conceded that his WPA claim is barred by the statute of limitations. The district court granted defendants' motions in two orders. In the first order, the court dismissed some claims and ordered further briefing. In the second order, the court dismissed the remaining claims. This appeal followed.

## III.

This court reviews de novo the dismissal of a claim under Fed. R. Civ. P. 12(b)(6). *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 750 (6th Cir. 2014). To avoid dismissal, Hasanaj's "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

On appeal, Hasanaj challenges only the dismissal of his federal procedural due process, wrongful termination (*Toussaint*), and FMLA claims.

**A.**

*Due Process*.  The Due Process Clause of the Fourteenth Amendment forbids a State from depriving persons of "life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV § 1, cl. 3.  For Hasanaj to state a procedural due process claim, he must allege: (1) he was deprived of a protected liberty or property interest; and (2) that the deprivation occurred without adequate procedural protections.  *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017).  Only the first prong is at issue here.

"Property interests are not created by the Constitution[;] 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law. . . .'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).  "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004) (citing *Perry v. Sindermann*, 408 U.S. 593, 602 (1972), among other cases).  "Although the underlying substantive interest is created by 'an independent source such as state law,' *federal constitutional law* determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005) (citation omitted).  To that end, "a property interest in a benefit" requires that a person have "more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Id.* at 756 (quoting *Roth*, 408 U.S. at 577 (1972)).  "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (citation omitted; collecting examples)).

Liberty interests include "the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, . . . and generally to enjoy those privileges long recognized . . . as essential to the orderly pursuit of happiness by free men." *Roth*, 408 U.S. at 572 (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)).

Hasanaj asserts a deprivation of four interests: (1) a property interest in his continued employment as a public teacher; (2) a property interest in the government complying with the teacher evaluation statute in order to terminate him under that statute; (3) a property interest in using his Michigan teaching certificate; and (4) a liberty interest in obtaining employment as a teacher in Michigan. Addressing each in turn, we conclude Hasanaj lacks a protected interest for purposes of his due process claim.[3]

**1.**

*Job Tenure.* Hasanaj had no protected property interest in his job because, as the Tenure Commission concluded, he did not satisfy Michigan's statutory tenure requirements.

Hasanaj claims otherwise, arguing that he had a property interest in "entitlement to continued employment" because he "legitimately relied" upon the "rules and understandings, promulgated and fostered by state officials," as well as the "policies and practices of the [District]." (*See* Appellant Br. 15-16, 45-50, and Reply Br. 5-6 (quoting *Perry*, 408 U.S. at 600-03)). It is true that government employees have a cognizable property interest in their job if they have tenure, are only removable for cause, or it can be legitimately implied that they have such status. *See Loudermill*, 470 U.S. at 538-39; *Crosby*, 863 F.3d at 552-53.

But Hasanaj overlooks a caveat that applies here: If a plaintiff is not entitled to tenure under a governing statute, he has no "legitimate claim" to job tenure regardless of the institution's policies and conduct. *See, e.g.*, *Perry*, 408 U.S. at 602 & n.7; *Ryan v. Aurora City Bd. of Educ.*, 540 F.2d 222, 227-28 (6th Cir. 1976), *cert. denied*, 429 U.S. 1041 (1977); *Edinger v. Bd. of Regents of Morehead State Univ.*, 906 F.2d 1136, 1138-40 (6th Cir. 1990); *see also*

---

[3]Hasanaj does not challenge the dismissal of his due process claim under the Michigan Constitution. Even if he did, however, the due process provisions of the Michigan and United States Constitutions "are often interpreted coextensively." *AFT Mich. v. State*, 866 N.W.2d 782, 809 (Mich. 2015); *see also Glover v. Parole Bd.*, 596 N.W.2d 598, 604 & n.16 (Mich. 1999).

*Yashon v. Gregory*, 737 F.2d 547, 554 (6th Cir. 1984) (collecting cases from other circuits). This follows from the basic hierarchy of substantive law (e.g., Constitution, statutes, regulations, common law). "One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. The contract will carry with it the infirmity of the subject matter.'" *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 504 (1987) (citation omitted). Whether the contract is express or implied, Michigan adheres to that fundamental principle. *See, e.g.*, *Detroit v. Amalgamated Ass'n of St. E. R. & M. C. Emps.*, 51 N.W.2d 228, 235 (Mich. 1952) ("To the extent that terms and conditions of public employment are governed by statute or charter, they are not subject to modification by contract . . . ." (citation omitted)); *Thorin v. Bloomfield Hills Bd. of Educ.*, 513 N.W.2d 230, 235 (Mich. Ct. App. 1994) ("[A] public employee cannot claim an implied contract where it violates the controlling body's statutory authority."); *accord Housey v. Macomb Cnty.*, 534 F. App'x 316, 324 (6th Cir. 2013).

Hasanaj does not allege that, contrary to the Tenure Commission's conclusion, he satisfied Michigan's statutory requirements to acquire tenure. Rather, he maintains that *Perry* and *Soni v. Board of Trustees*, 513 F.2d 347 (6th Cir. 1975), control the outcome here. He is mistaken.

*Perry* is inapposite as it involved a college with "no explicit tenure system." 408 U.S. at 602. In that context, the Court held that the college professor whose one-year contract was not renewed "must be given an opportunity to prove the legitimacy of his claim" to "*de facto*" job tenure "in light of 'the policies and practices of the institution.'" *Id.* at 594, 600, 603 (citation omitted). That was because the professor had been employed at various schools in the state college system for ten years and claimed that he had "legitimately relied upon" both "the college's official Faculty Guide" and the state college system's guidelines, which seemed to confer "some form of job tenure" on a professor in his situation. *Id.* at 594, 600. But *Perry* noted, however, "We do not now hold that the respondent has any such legitimate claim of entitlement to job tenure. . . . *If it is the law of Texas* that a teacher in the respondent's position has no contractual or other claim to job tenure, the respondent's claim would be defeated." *Id.* at 605 n.7 (emphasis added).

This case is also far afield from *Soni v. Board of Trustees*. There, this court applied *Perry* to conclude that a university professor was entitled to a due process hearing when his term contract was not renewed for the next year because, in numerous ways, the university "objectively acted toward plaintiff in such a manner as to reasonably lead him to believe" that he had "a relative degree of permanency." 513 F.2d at 348, 350-51 (citation omitted). The tenured faculty had met and concluded that because the professor was not a United States citizen, he "could not be appointed formally to a permanent position in view of a University regulation and a state law, T.C.A. § 49-1303." *Id.* at 349. The Tennessee statute dictated "that although aliens could be appointed to temporary positions at the University, they could not receive permanent appointments." *Id.* The professor was then informed in writing: "It was recommended that you be appointed an associate professor without tenure . . . . The question of recommending tenure will be considered by a similar departmental group at the time you become a citizen of the United States." *Id.* The acting department head also told Professor Soni "that state law prohibited a grant of tenure to aliens, but he also gave assurances that the meeting in fact had been favorable, that the faculty wanted Dr. Soni to stay at the University, and that Dr. Soni's prospects with the University were good." *Id.* at 350. He was nevertheless "told that he would be treated like any other tenured professor." *Id.* Indeed, the professor "participate[d] in the University retirement program," which was "restricted at that time to 'permanent type personnel,'" and he attended department meetings and "voted on tenure for other teachers." *Id.* A year after becoming a United States citizen, Professor Soni was terminated without a hearing "because his performance . . . had 'not been of the quality we expect of our tenured staff.'" *Id.*

*Soni* reasoned that, "despite Dr. Soni's awareness of the disqualifying statute," he had "a cognizable property interest in the form of a reasonable expectation of future and continued employment." *Id.* (footnote and citation omitted). Nor was his expectation eliminated by the letter explicitly stating that his "position was one without tenure." *Id.* at 351. And although the *university* "had a well-established tenure system," that did not negate Professor Soni's "reasonable expectation of continued employment." *Id.* Because *Perry* did not foreclose the possibility of such an expectation "in the context of a [university's] formal tenure system," *Soni* declared that "[t]he existence of such a system is but one factor for the trial court to consider in analyzing the due process claim of a formally nontenured professor." *Id.*

As with *Perry*, *Soni*'s distinguishing feature is that *state law* did not preclude the professor from claiming job tenure. The statute barring tenure for aliens was no longer an obstacle for Professor Soni by the time he was terminated. At that point, he was a United States citizen. *Id.* at 350.

In contrast, Hasanaj's claim to a property interest in job tenure is refuted by *Ryan v. Aurora City Board of Education*, 540 F.2d 222 (6th Cir. 1976), and *Edinger v. Board of Regents of Morehead State University*, 906 F.2d 1136 (6th Cir. 1990). As in this case, *Ryan* and *Edinger* involved statutory tenure rules that precluded any property interest in continued employment.

*Ryan* held that four public school teachers who were "non-tenured under state law" did "not have a 'legitimate claim of entitlement' to continued employment" under *Roth* and *Perry*. 540 F.2d at 223. Under Ohio law, a so-called "continuing contract" was the equivalent of "tenure." *Id.* at 224. To obtain a continuing contract, a teacher needed to meet "eligibility requirements (e.g., years of service, appropriate teaching certification)" followed by action by the board to "offer continued employment" or the board's failure to act on the superintendent's recommendation. *Id.* (referencing O.R.C. § 3319.11). But a "teacher employed under a limited contract, and *not eligible to be considered for a continuing contract*," could "acquire a right of reemployment *on a limited contract only if* the Board fails to send written notice by April 30 (without reasons) of its decision not to renew the teacher's limited contract." *Id.* at 224-25 (emphasis added). The school board in *Ryan* held a meeting, during which they voted not to renew plaintiffs' limited contracts, and then informed each plaintiff (without stating a reason) that the board intended "not to re-employ" them when their contracts expired. *Id.* at 223-24.

Despite the state tenure statutes, the plaintiffs in *Ryan* argued that the board's regulations in a policy manual contained an "implied promise" that "limited-contract teachers would be renewed unless there are valid reasons for nonrenewal, thereby creating a 'property' interest in continued employment." *Id.* at 225.[4] The court recognized that "[a] non-tenured teacher may

---

[4]The board's regulations in *Ryan*: (1) stated the April 30 notice requirement, consistent with the statute; (2) required "at least one conference and one classroom visit each year with teacher personnel" and, "[i]f a person's work is unsatisfactory, specific suggestions for improvement . . . made in the conference report"; and (3) required subsequent written reports to "confirm progress made and provide a basis for reappointment." 540 F.2d at 225 (emphasis omitted).

acquire an 'expectancy' of continued employment where 'the policies and practices of the institution' rise to the level of implied tenure." *Id.* at 227 (quoting *Perry*, 408 U.S. at 603).

But *Ryan* rejected plaintiffs' theory, holding that "a non-tenured teacher has no 'expectancy' of continued employment, whatever may be the policies of the institution, where there exists *a statutory tenure system*." *Id.* (emphasis added). Because "property interests are created by state law and not the Constitution," *Ryan* explains that if "the State limits the guarantee to only tenured teachers, [that] necessarily negatives any property interest." *Id.* Accordingly, *Ryan* concluded that "[t]he fact that Ohio already has an explicit tenure policy obviates the need, which existed in [*Perry*], to supply one by implication." *Id.* at 228. In concluding its analysis, *Ryan* rejected plaintiffs' reliance on *Soni* in one sentence: "*Soni* has no application in the present case; it involved a factual situation distinctly different from the facts of the case at bar." *Id.* at 228. As explained, we know precisely why *Soni* is distinguishable.

*Edinger* also rejected a professor's claim to *de facto* tenure in light of statutory tenure requirements. 906 F.2d at 1138-40. Under a Kentucky statute in that case, this court explained that "formal tenure can only be granted by recommendation of a university's president and the affirmative votes of a majority of its board of regents." *Id.* at 1138-39. There was "no evidence that the Board of Regents ever formally voted to ratify [a] tenure contract" for the professor. *Id.* at 1139; *see also id.* at 1138. Yet the professor argued that he believed he had completed the university's five-year probationary period and then received a contract marked "tenured," which he claimed "led him to believe he had obtained tenure." *Id.* at 1137-38.

*Edinger* concluded, however, that the professor's contract did not override: (1) "the statutory requirement that the majority of the Board approve any grant of tenure"; (2) the provision in the "contract expressly stat[ing] that the grant of tenure was 'subject to approval by the Board of Regents'"; and (3) the fact that the university "clarified in writing" that the "tenured" notation on his contract was an error because the Board had not formally voted to

grant him that status.  *Id.* at 1139, 1141.  *Edinger* accordingly held that the professor did not have "an objectively reasonable expectation of continued employment."  *Id.* at 1139-40.**[5]**

The same holds true here.  Because Hasanaj has not alleged that he satisfied the statutory probation requirements to acquire tenure, he was an at-will employee and thus lacked a protected property interest in his job.  *Bishop v. Wood*, 426 U.S. 341, 345-47 (1976); Mich. Comp. Laws Ann. §§ 38.83(2), 38.91(1); *supra* Section I.A.  A contract or a tacit understanding cannot override those statutory requirements.  *See, e.g.*, *Amalgamated Ass'n*, 51 N.W.2d at 235; *Thorin*, 513 N.W.2d at 235; *see also DeBenedictis*, 480 U.S. at 504.  Therefore, it is irrelevant that Hasanaj stopped receiving contract renewal notices, that the three-strikes provision was invoked as the basis for firing him, that he was notified that he could appeal to the Tenure Commission (a right reserved for tenured teachers), and that the parties stipulated before the Tenure Commission that Hasanaj obtained tenure.

## 2.

*Compliance with State Law.*  Hasanaj also lacks a protected property interest in the "expectation" that the District was required to follow the teacher evaluation statute, Mich. Comp. Laws Ann. § 380.1249, in order to fire him under § 380.1249(2)(j).  State law procedures that relate to property rights are not property rights.

"'Property' cannot be defined by the procedures provided for its deprivation any more than can life or liberty."  *Loudermill*, 470 U.S. at 541; *see also Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Richardson*

---

**[5]**To Hasanaj's credit, our cases have not been a model of clarity.  Rather than cite *Ryan*'s holding, *Edinger* cited a slightly different rule from the Ninth Circuit: "[T]he existence of a formal code governing the granting of tenure precludes a reasonable expectation of continued employment absent extraordinary circumstances."  *Edinger*, 906 F.2d at 1140 (quoting *Haimowitz v. Univ. of Nev.*, 579 F.2d 526, 528 (9th Cir. 1978)).  But *Ryan* is binding because it came before *Edinger*.  *See Wright v. Spaulding*, 939 F.3d 695, 700 (6th Cir. 2019); *Darrah v. City of Oak Park*, 255 F.3d 301, 309-10 (6th Cir. 2001).  Later, in *Roberts v. Ward*, this court stated: "*Edinger* also states that even if a tenure system exists, where the circumstances surrounding the employment relationship 'lead the [non-tenured] employee to reasonably believe his employment is permanent, such actions may create a protected property interest in continued employment.'"  468 F.3d 963, 970 (6th Cir. 2006) (cleaned up) (quoting *Edinger*, 540 F.2d at 1140).  But *Edinger* was discussing *Soni*, and the only "tenure system" in *Soni* was the university's.  At the time the professor was terminated, he satisfied the only statute mentioned in *Soni*.  513 F.2d at 350.

*v. Twp. of Brady*, 218 F.3d 508, 517-18 (6th Cir. 2000) (holding that a plaintiff "can have no protected property interest in the procedure itself"); *accord United of Omaha Life Ins. Co. v. Solomon*, 960 F.2d 31, 34 (6th Cir. 1992). Indeed, *Ryan* held that the board's violation of its regulations, which required a statement of reasons for dismissal, did not trigger constitutional scrutiny. 540 F.2d at 228-29.

Hasanaj's argument is more tenuous because the Michigan teacher evaluation procedures that he alleges were violated do not even govern the termination decision itself. The fact remains he had no "protected entitlement" in the District exercising its "discretion" to fire him. *See Gonzales*, 545 U.S. at 756; *see also Richardson*, 218 F.3d at 517-18. That does not change merely because Hasanaj alleges a violation of some underlying state-law procedures. "The basic principle of at-will employment is that an employee may be terminated for a good reason, bad reason, or no reason at all." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 606 (2008) (cleaned up). The Supreme Court has "never held that it is a violation of the Constitution for a government employer to discharge an employee based on substantively incorrect information," and that is true "even if the reasons for the dismissal are alleged to be mistaken or unreasonable." *Id.* (citations omitted).

Without a property interest in his job, Hasanaj lacked any protected interest in governmental compliance with related state-law procedures. *See Bishop*, 426 U.S. at 349-50; *see also Gonzales*, 545 U.S. at 771-72 (Souter, J., concurring).

Hasanaj laments that if he cannot proceed on his due process claim in federal court, then Michigan teachers will have "no forum" in which to enforce the teacher evaluation system or the Tenure Act.[6] Even if true, that does not transform a violation of state law into a matter of constitutional magnitude. *See Gonzales*, 545 U.S. at 767 & n.13; *see also Paul v. Davis*, 424 U.S. 693, 700 (1976). Absent a protected interest in continued employment, "[r]eview of actions of school authorities under the Teachers' Tenure Law of Michigan is the prerogative of the courts of that State and not of the federal judiciary." *Ryan*, 540 F.2d at 227 (quoting

---

[6]*But see Summer v. Southfield Bd. of Educ.* (*Summer I*), 874 N.W.2d 150, 153, 162 (Mich. Ct. App. 2015); *see also Summer v. Southfield Bd. of Educ.* (*Summer II*), 919 N.W.2d 641, 654 & n.4 (Mich. Ct. App. 2018).

*Manchester v. Lewis*, 507 F.2d 289, 291 (6th Cir. 1974)); *see also Morse v. Wozniak*, 565 F.2d 959, 960 (6th Cir. 1977).

**3.**

*Teaching Certificate.*   Hasanaj fares no better in claiming a deprivation of a property interest in his Michigan teaching certificate.  He argues that by assigning him three consecutive ineffective ratings (conducted in violation of Mich. Comp. Laws Ann. § 380.1249) and then terminating his employment (as required by § 380.1249(2)(j)), defendants rendered his license "valueless" because a dozen school districts have refused to hire him.

Of course, individuals may claim a protected property interest in state-issued licenses that are revocable in limited circumstances or essential to pursuing an occupation or livelihood.  *See, e.g.*, *Barry v. Barchi*, 443 U.S. 55, 64 & n.11 (1979) (horse trainer's license); *Bell v. Burson*, 402 U.S. 535, 539 (1971) (driver's license); *Wojcik v. City of Romulus*, 257 F.3d 600, 609-10 (6th Cir. 2001) (Michigan liquor license).  There is no doubt Hasanaj has a protected interest in his teaching certificate.  *See* Mich. Comp. Laws Ann. § 380.1535a (revocation and suspension of teaching certificates).  The problem for Hasanaj is that the District did not render Hasanaj's license "valueless," much less deprive him of it.

By all accounts, Hasanaj still holds a valid teaching certificate.[7]  His certificate was never suspended or permanently revoked under § 380.1535a.  *See also* § 380.1535 (providing that a teacher has "a valid teacher's certificate . . . until such time as the certification is confirmed or rejected by the state board of education").  Contrary to Hasanaj's contention, he has not been permanently "removed from teaching" in Michigan.  Hasanaj was merely dismissed under § 380.1249(2)(j), which provides that "if a teacher is rated as ineffective on 3 consecutive annual year-end evaluations," the school district "shall dismiss the teacher from his or her employment."  The statute says nothing about future employment.  It is also telling that the specific statute

---

[7]*See Michigan Educator Credential Status and PIC Lookup*, Michigan Online Educator Certification System, https://mdoe.state mi.us/moecs/PublicCredentialSearch.aspx (search "Kola Hasanaj").  Faced with a Rule 12(b)(6) motion to dismiss, the status of Hasanaj's teaching certificate is a "public record" we may consider as it is "referred to in the complaint and . . . central to the claims contained therein."  *Gavitt*, 835 F.3d at 640.

governing the hiring of teachers does not mention the three-strikes provision as a disqualification. *See* § 380.1231.

Nor is Hasanaj's teaching license "valueless," as he contends, under *Med Corporation, Inc. v. City of Lima*, 296 F.3d 404 (6th Cir. 2002). That case recognized that even if the government has "not formally deprive[d] the owner of title to the property," a "deprivation" may nonetheless occur in "certain circumstances" where "indirect injuries *effectively render the property valueless*." 296 F.3d at 412-13. But *Med Corporation* rejected an ambulance company's argument that the city had rendered its license "valueless" by suspending the company from receiving 911 dispatches for one week. *Id.* The reason was because the company did not show that "the proposed suspension would *completely* destroy the value of its license" and there was "no evidence to show that 911 dispatches constitute all, or even the majority of, [the company]'s business." *Id.* at 413.

As in *Med Corporation*, Hasanaj "remain[s] entirely free to obtain employment" with another Michigan school district. *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 896 (1961). A third-party's decision not to hire Hasanaj based on a history of unfavorable performance reviews is not dictated by the State or his former employer. And as explained, the performance review procedures alone are not property interests.

Hasanaj proves the point in relying on *Schware v. Board of Bar Examiners of New Mexico*, 353 U.S. 232, 238-39 (1957), for the proposition that a State cannot "exclude a person from the practice" of an occupation based upon a qualification that does not have "a rational connection with the applicant's fitness or capacity to practice" that profession. "*Schware* held that former membership in the Communist Party and an arrest record relating to union activities could not be the basis for completely excluding a person from the practice of law." *Conn v. Gabbert*, 526 U.S. 286, 292 (1999). Hasanaj was not "completely excluded" from teaching in Michigan, and even assuming that three "ineffective" ratings operate as teaching disqualifications, teaching performance is a rational qualification directly connected to an individual's capacity to be a teacher.

**4.**

*Liberty to Contract.* For similar reasons, Hasanaj cannot proceed on his claim that he was deprived of his liberty or (property) interest in his right to contract. Hasanaj's view is essentially a reformulation of his license argument, contending that the ineffective ratings, coupled with "the operation of . . . § 380.1249(2)(j)," impose a "disability" that prevents him from obtaining employment in his chosen profession.

In a broad sense, Hasanaj's claim requires the combination of two components: (1) the liberty "to engage in any of the common occupations of life," *Roth*, 408 U.S. at 572 (quoting *Meyer*, 262 U.S. at 399); and (2) the right to due process "where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him," *id.* at 573 (quoting *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971)). A liberty interest in reputation is only "sufficient to invoke the procedural protection of the Due Process Clause" if combined with "some more tangible interests such as employment." *Paul*, 424 U.S. at 701, 711.

> Applying those basic requirements, Hasanaj must allege five elements:
>
> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from [protected] employment [or foreclose future employment opportunities]. . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance . . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*See Crosby*, 863 F.3d at 555-56 (quoting *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002)); *see also Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997). Hasanaj has not satisfied the first, second, and fifth elements.

*First*, Hasanaj lacked a protected interest in his job, and he "remains as free as before to seek another" teaching job in Michigan. *See Bishop*, 426 U.S. at 348-49 (citation omitted); *see, e.g.*, *Roth*, 408 U.S. at 573-75; *Crosby*, 863 F.3d at 556. *Second*, Hasanaj was "not deprived of his liberty interest" merely by virtue of the District disseminating his "inadequate performance"

reviews.  *Quinn*, 293 F.3d at 320 (citation omitted).  *Third*, Hasanaj alleges, and Michigan's teacher evaluation system seems to suggest, that public dissemination, i.e., posting performance evaluations online, is required, not voluntary.  Beyond those deficiencies, Hasanaj does not allege he requested a name-clearing hearing, and "failure to request a name-clearing hearing is fatal to a claim alleging a deprivation of a liberty interest without due process." *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 584-85 (6th Cir. 2021) (quoting *Quinn*, 293 F.3d at 323).

No matter how Hasanaj frames his claim, he was not deprived of a protected "property" or "liberty" interest as required for a procedural due process claim under the Fourteenth Amendment.

**B.**

*Wrongful Termination.*  Everything said thus far also forecloses Hasanaj's wrongful termination claim under *Toussaint v. Blue Cross & Blue Shield of Michigan*, 292 N.W.2d 880 (Mich. 1980).[8]  As relevant here, *Toussaint* holds that Michigan's "presumption of employment at will is overcome" based upon a "just-cause" provision, "implied at law," where "an employer's policies and procedures instill a 'legitimate expectation' of job security in the employee." *See Lytle v. Malady*, 579 N.W.2d 906, 910-11 (Mich. 1998) (citation omitted).

In other words, *Toussaint* recognizes the potential for implied tenure.  *See Toussaint*, 292 N.W.2d at 893-94 & n.30 (discussing *Perry*, 408 U.S. at 601-03).  Indeed, *Toussaint* calls for the same showing, grounded in Michigan law, that is required to claim a "protected" property interest in continued employment for a due process claim.  *See, e.g.*, *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 765-66 (6th Cir. 2010); *Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 414 (Mich. Ct. App. 1997).

As explained, Hasanaj cannot supersede Michigan's tenure statutes with an express or "implied" contract. *See, e.g.*, *Amalgamated Ass'n*, 51 N.W.2d at 235; *Thorin*, 513 N.W.2d at 235; *see also DeBenedictis*, 480 U.S. at 504.  Thus, he has no wrongful termination claim.

---

[8]Hasanaj does not challenge the dismissal of his wrongful discharge claim in violation of public policy under *Suchodolski v. Michigan Consolidated Gas Co.*, 316 N.W.2d 710 (Mich. 1982).

**C.**

*FMLA*.   That leaves Hasanaj's claim that he received a negative evaluation while on FMLA leave in May 2014, and was later terminated, in retaliation for taking FMLA leave.  *See* 29 U.S.C. § 2615(a)(1).  His claim is time-barred.

The statute of limitations for FMLA actions is two years "after the date of the last event constituting the alleged violation," or three years if the violation is "willful."   29 U.S.C. § 2617(c)(1)-(2).  A violation is willful if "the employer intentionally or recklessly violated the FMLA."  *Crugher v. Prelesnik*, 761 F.3d 610, 617 & n.9 (6th Cir. 2014) (quoting *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 417 (6th Cir. 2005)).  Hasanaj was terminated on September 12, 2016, and he filed his complaint three years later on September 12, 2019.

First, assuming his May 2014 negative evaluation is an adverse employment action, *see Nathan v. Great Lakes Water Auth.*, 992 F.3d 557, 573 (6th Cir. 2021), not even the three-year period would make the evaluation cognizable.  Second, the last time Hasanaj took FMLA leave was in January or February of 2016, and he did not teach again.  Nothing in the complaint remotely suggests that in terminating Hasanaj roughly seven months later, as required under Mich. Comp. Laws Ann. § 380.1249(2)(j), the District did so intentionally or recklessly because he took FMLA leave.  A conclusory assertion is not enough.  *Crugher*, 761 F.3d at 617; *see Iqbal*, 556 U.S. at 678-79.

\*     \*     \*

The judgment is AFFIRMED.

_____

**CONCURRING IN PART AND DISSENTING IN PART**

_____

BERNICE BOUIE DONALD, Circuit Judge, concurring in part and dissenting in part. Parents of school-aged children trust that when they send their children to school, their teacher possesses the requisite qualifications to teach a given course. One would assume that a teacher certified to teach Spanish would be teaching students Spanish, not Math, Science, and Physical Education. This is a case involving a teacher who is certified to teach English and Bilingual Studies. He is someone who specializes in the written word–prose; haikus; essays; and sonnets. Yet, the Detroit Public Schools Community District (District) assigned him to teach complex Math and Science courses, in addition to Physical Education. After he did not perform "effectively" for three years outside of his expertise, the District fired him.

Under Michigan law, the District does not have the authority or discretion to assign a teacher to "teach in a grade or department of the school" for which the teacher "does not hold a valid teaching certificate." *See* Mich. Comp. Laws Ann. §§ 380.1233(1), 380.1233b(1)-(2) (providing exceptions). The majority even cites in a footnote that it is a crime for the District to assign a teacher to teach outside of his certification. *See* Mich. Comp. Laws Ann. § 388.1763(1), (6) (providing that any school official employing an individual in violation of this section "is guilty of a misdemeanor punishable by a fine of $1,500.00 for each inciden[t]"). The District did not comply with this law, however. Instead, it used Michigan's statutory teacher evaluation system as a ground for dismissal to insulate itself from its violative conduct. The District's failure to comply with the law resulted in years of Hasanaj's employment not being counted towards tenure and an ill-justified termination for "ineffective" ratings in courses that he was not certified to teach.

I write separately because Hasanaj provided sufficient evidence that he held a protected property interest deserving of further due process inquiry into the constitutionality of the District's actions within the employment relationship.

The Fourteenth Amendment's Due Process Clause shields the State from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. Const. amend. XVI § 1, cl. 3. To establish a procedural due process claim under the Fourteenth Amendment, a plaintiff must show: (1) that it "had a life, liberty, or property interest protected by the Due Process Clause; (2) it was deprived of this protected interest; and (3) the state did not afford it adequate procedural rights." *Daily Services, LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). The majority suggests that Hasanaj's troubles lie with the first prong. I disagree.

Contrary to the majority's holding, neither the existence of a contract nor a statutory tenure system, alone, can defeat Hasanaj's claim that he possessed a protected property interest in continued employment. *See Perry v. Sindermann*, 408 U.S. 593, 599 (1972) (stating that the plaintiff's "lack of formal contractual or tenure security in continued employment… [is]… not entirely dispositive" of the claim). To be clear, the Supreme Court articulated in *Board of Regents v. Roth*, that a nontenured teacher's claim was not dispositive based on the mere fact that his contract was not renewed, or he was nontenured; but a plaintiff may show that the Constitution owed him due process rights by proving that he had a "'property' interest in continued employment, despite the lack of tenure or a formal contract." *Id.*; *See Board of Regents v. Roth*, 408 U.S. 564 (1972). Even where a formal tenure system exists, whether it be outlined by the University's policies or through a state's statutory scheme, "the existence of such system is *but one factor* … to consider in analyzing the due process claim of a formally nontenured professor." *Soni v. Board of Trustees of Univ. of Tenn.*, 513 F.2d 347, 351 (6th Cir. 1975) (emphasis added and citations omitted); *see also Sindermann*, 408 U.S. at 604 ("A teacher, like the respondent, who has held a position for a number of years, might be able to show from the circumstances of this service–and from *other relevant facts*–that he has a legitimate claim of entitlement to job tenure.") (emphasis added). At the summary judgment stage, the allegations must be construed most favorably to Hasanaj. And Hasanaj must be given the opportunity to prove the legitimacy of his claim in light of "the policies and practice of the institution." *Id.* at 603.

As the majority recognizes, the years that Hasanaj taught within his certified area, he was rated "good to excellent." Starting in 2011, however, Hasanaj's rated performance declined. Beginning in 2013, the District assigned Hasanaj to teach more classes outside of his certification than he taught within his certification. [R.26]. Specifically, Hasanaj taught four math classes and only two language classes. [*Id.*]. Again in 2015, the District assigned Hasanaj to teach science and physical education—subjects that he is not certified to teach. [*Id.*]. When he sought help from the principal of the school, Cindy Lang, he was told to "Google" science lesson plans. [*Id.*]. Then, after years of teaching outside of his certified area, he was rated as an "ineffective" teacher for three consecutive annual evaluations, which led to his termination. [*Id.*].

The District relies on select provisions of Michigan's Tenure Act to justify the termination, while simultaneously violating and not complying with other provisions of that same Act. *See* Mich. Comp. Laws Ann. § 380.1249(2)(j) (requiring the District to terminate Hasanaj after receiving three "Ineffective" ratings consecutively during annual evaluations); *see also* § 380.1249(c) (requiring the District to include "specific performance goals" in the evaluations to assist in "improving effectiveness" and to provide "training… by the school administrator or designee" to assist teachers in meeting these goals before firing); § 380.1249(1)(d)(iv) (stating that the evaluation system exists to remove teachers only "after they have had ample opportunities to improve" under a "transparent" and "fair" process.) (citations omitted).

The District's customs and practices created an understanding that Hasanaj had a property interest in continued employment with the District. In addition, the District's noncompliance with state law is a highly relevant factor because, as a result of the District assigning Hasanaj to teach outside of his certification, it stripped him from years that could have been credited towards his tenure and years of fair and transparent evaluations.

First, the majority argues that Hasanaj "had no protected property interest in his job because, as the Tenure Commission concluded, he did not satisfy Michigan's statutory tenure requirements." [Maj. Op., p. 11]. The majority relies on *Ryan v. Aurora City Bd. of Ed.*, 540 F.2d 222 (6th Cir. 1976), and *Edinger v. Board of Regents of Morehead State University*,

906 F.2d 1136 (6th Cir. 1990), stating that both cases involved statutory tenure rules which precluded any property interest in continued employment. [Maj. Op. at 14].

The majority is wrong. *Ryan* distinguished *Soni's* holding based on a "factual situation distinctly different from the facts of" *Soni*, not based on some alleged statutory distinction. *Ryan*, 540 F.2d at 228. And *Edinger's* "factual situation" is also different from the case at bar. As stated above, we have noted in various cases that the existence of a formal tenure system is "but one factor" and not "entirely dispositive" of a plaintiff's due process claim. *Soni*, 513 F.2d at 351. Further, *Ryan* and *Edinger's* "statutory tenure rules" do not override the Supreme Court's recognition that "property interests subject to procedural due process protection are not limited by a few rigid, technical forms," but may also arise out of the course of dealings which explicitly or implicitly create a heightened reliance interest in continued employment. *Sindermann*, 408 U.S. at 601. Thus, it is improper to look at whether the state has a statutory tenure system and end the due process inquiry there. Instead, the proper question is whether the plaintiff has *acquired* a protected property interest through mutual understanding and the conduct of the employer.

Here, in a twist of irony, the District itself understood Hasanaj to be a tenured teacher and acted accordingly. For instance, the District ceased sending Hasanaj renewal contracts each year and referred him to appeal his termination to the Tenure Commission. Both the District and Hasanaj even stipulated that he was a tenured teacher before the Tenure Commission. And the majority still, in the face of overwhelming evidence, and contrary to what the District itself concedes, holds today that Hasanaj does not have a protected property interest in continued employment.

Second, the majority holds that Hasanaj "lacks a protected property interest in the 'expectation' that the District was required to follow the teacher evaluation statute." [Maj. Op. at p. 17]. But the District's noncompliance with the statute itself is not the protected property interest; it is but another factor to consider when weighing whether Hasanaj possessed a protected property interest in his continued employment. The District's obligations to provide Hasanaj with training, improvement plans, and aid him in implementing those plans *before* termination are relevant to consider when determining the understanding of the parties and the

transparency and fairness of the process. The District's other obligation, to assign him to only classes that he is certified to teach, is also highly relevant to the understanding of the parties. Both factors are material to the analysis of whether Hasanaj has a protected property interest in continued employment. As stated above, the District required him to teach outside of his certified area of teaching, thereby undermining the purpose of counting teaching time toward tenure; rated him "Ineffective" for his years teaching classes outside of his certification after telling him to "Google" lesson plans; and then instructed him to appeal his termination to the Tenure Commission (because the District believed that he was a tenured teacher).

In light of overwhelming evidence that Hasanaj possessed a protected property interest in continued employment with the District, the majority sets a dangerous precedent which creates a judicial loophole where teachers can serve the District's needs–even if it is illegal–and still not receive constitutional protections at the summary judgment stage.

To be clear, I express no view as to whether Hasanaj's evidence is sufficient to meet the next stage of the procedural due process inquiry. The District Court is best situated to explore those questions on a remand order. Rather, I write separately only to express my view that the District, however inadvertently, created in Hasanaj a protected property interest in his continued employment.